IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NATIONAL CREDIT UNION )
ADMINISTRATION BOARD, )
 )
      Plaintiff, )
 )
  v. ) Case No. 11-2340-JWL
 ) (Consolidated with
RBS SECURITIES, INC.; ) Case No. 11-2649-JWL)
RBS ACCEPTANCE, INC.; )
FINANCIAL ASSET SECURITIES CORP.; )
FREEMONT MORTGAGE SECURITIES )
CORP.; )
RESIDENTIAL FUNDING )
MORTGAGE SECURITIES II, INC.; )
NOVASTAR MORTGAGE FUNDING )
CORP.; )
NOMURA HOME EQUITY LOAN, INC.; )
LARES ASSET SECURITIZATION, INC.; )
and WACHOVIA MORTGAGE LOAN )
TRUST, LLC, )
 )
      Defendants. )
 )
_____)

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motions to dismiss the amended complaint filed by defendants RBS Securities, Inc., RBS Acceptance, Inc., and Financial Asset Securities Corp. (collectively "RBS") (Doc. # 146); NovaStar Mortgage Funding Corporation ("NovaStar") (Doc. # 144); Nomura Home Equity Loan, Inc. ("Nomura") (Doc. # 150); and Wachovia Mortgage Loan Trust, LLC ("Wachovia") (Doc. # 153).

For the reasons set forth below, the Court **denies** the motions.[1]

### I. Background

Plaintiff National Credit Union Administration Board brings this suit as conservator and liquidating agent of U.S. Central Federal Credit Union ("U.S. Central"). The suit relates to 20 offerings involving 29 different residential mortgage-backed securities ("RMBS" or "certificates") purchased by U.S. Central. By the present suit, plaintiff brings claims under the federal Securities Act of 1933 and a Kansas statute, based on alleged untrue statements or omissions of material facts relating to each RMBS. Defendant RBS Securities, Inc. was the underwriter or seller for the certificates, while the other defendants issued the certificates.

A number of defendants filed motions to dismiss plaintiff's original complaint, and Judge Rogers of this Court granted the motion in part and denied it in part. *See National Credit Union Admin. Bd. v. RBS Sec., Inc.*, 900 F. Supp. 2d 1222 (D. Kan. 2012) ("*RBS*").[2] Plaintiff was granted leave to file an amended complaint, and it did so.

---

[1] Because these motions may be resolved upon consideration of the parties' multiple briefs, the Court denies RBS's request for oral argument.

[2] Certain defendants were permitted to take an interlocutory appeal from Judge Rogers's rulings with respect to particular limitations issues, but the Tenth Circuit affirmed those rulings. *See National Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, __ F.3d __, 2013 WL 4516997 (10th Cir. Aug. 27, 2013).

The instant motions to dismiss the amended complaint were then filed.[3] The case was subsequently reassigned to the undersigned judge. (There are now eight other similar suits, involving different certificates, pending before the undersigned, one of which has been consolidated with this action.)

**II.     Analysis**

   *A.     Lack of Originator-Specific Allegations*

Plaintiff's central allegation is that the originators for the loans underlying the certificates systematically abandoned underwriting guidelines, and that the certificates' offering documents failed to disclose that fact or misrepresented that guidelines were followed. In the original motions to dismiss, defendants argued that plaintiff's allegations were not sufficiently detailed to state a plausible claim that originators had abandoned underwriting guidelines with respect to these particular loans. In resposne to that argument, Judge Rogers held as follows: "For those MBS certificates involving originators who have been alleged to have abandoned underwriting standards or recklessly deviated from underwriting standards without compensating factors, the court

---

[3] Defendant Lares Asset Securitization, Inc. has not filed a motion to dismiss. Defendant Residential Funding Mortgage Securities II moved to dismiss the original complaint, but subsequently declared bankruptcy. Judge Rogers dismissed all claims against defendant Freemont Mortgage Securities Corp., and plaintiff has reasserted its claims against that defendant in the amended complaint only to preserve them for appeal. Plaintiff has voluntarily dismissed its claims against defendants Saxon Asset Securities Co. and IndyMac MBS, Inc.

3

finds that the claims in the complaint are not too conclusory." *See RBS*, 900 F. Supp. 2d at 1253. Judge Rogers distinguished such certificates, however, from those certificates involving originators about whose conduct there were no specific allegations (other than general originate-to-distribute ("OTD") percentages). *See id.* at 1253-54. Judge Rogers held that with respect to certificates without originator-specific allegations, "it is implausible to infer that the originators of the loans must have systematically abandoned the underwriting standards or that there is a reasonable expectation that discovery would prove this allegation." *See id.* at 1254. More specifically, Judge Rogers stated that he did not believe "that evidence of defaults and delinquencies and the evidence of later credit ratings downgrades, in combination with the general observations of the mortgage industry at the time, is adequate to state a plausible claim absent specific allegations against the loan originators for the MBS certificates." *See id.* (citing *Plubmers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 773-74 (1st Cir. 2011)). Based on that conclusion, Judge Rogers dismissed claims based on nine certificates from six offerings for which plaintiff had failed to make originator-specific allegations. *See id.* at 1254-55. Judge Rogers did give plaintiff leave to amend to cure that deficiency, however. *See id.* at 1262.

In its amended complaint, plaintiff added new originator-specific allegations for the sole originator for one offering (FFMLT 2006-FF16) and for the originator of 17% of the loans backing a second offering (HVMLT 2006-10), but it did not add specific allegations about the conduct of the other originators for the other four dismissed

4

offerings. Thus, RBS and Wachovia[4] argue that the Court should now dismiss plaintiff's claims based on those four offerings, in accordance with Judge Rogers's requirement of originator-specific allegations.[5]

In response, plaintiff relies on its new allegations that, based on a forensic analysis of 13,708 loans from the six dismissed offerings, average loan-to-value ("LTV") and owner-occupancy ratios were significantly understated and thus misrepresented in the offering documents for those six offerings. Plaintiff argues that such allegations, tied to the specific loans involved in these offerings, provide the same link effected by originator-specific allegations and thus help to state plausible claims based on those offerings. Plaintiff notes that Judge Rogers has already accepted this same argument in ruling on a motion to dismiss filed in the consolidated case, No. 11-2649, by defendant Wachovia Capital Markets, LLC. In that case, the complaint did not contain originator-specific allegations, but it did contain allegations based on a similar forensic analysis of

---

[4]These six offerings do not include the offerings involving NovaStar or Nomura, as plaintiff's original complaint included specific allegations about the originators for those defendants' offerings. NovaStar argues that plaintiff has not included allegations about its originator's conduct specifically with respect to these loans. The Court is not persuaded, however, to reconsider Judge Rogers's conclusion that plaintiff made sufficient originator-specific allegations to support a claim based on NovaStar's offering.

[5]RBS argues that the Court should also dismiss the claims relating to the HVMLT 2006-10 offering because plaintiff did not include specific allegations relating to all of that offering's loan originators. The Court rejects that argument; as plaintiff points out, even one originator's systematic abandonment of underwriting guidelines could make untrue a representation that the guidelines were generally followed with limited exceptions. For the same reason, the fact that NovaStar purchased some of its loans from other originators does not provide a basis for dismissal.

5

LTV and owner-occupancy ratios for the loans at issue. *See id.* at 1263. Judge Rogers concluded that, despite the absence of originator-specific allegations, the forensic analysis suggested that misrepresentations were made regarding LTV and owner-occupancy ratios, and that such information with a direct connection to the particular loan pools, together with the other allegations, stated a plausible claim for relief. *See id.* at 1264.

RBS and Wachovia argue that this ruling from the consolidated case should not be applied in this case as well. They have not explained, however, why this Court should not reach the same conclusion here, other than to argue that Judge Rogers seemed to require originator-specific allegations in this case and that claims that have survived in other courts have involved originator-specific allegations. Judge Rogers explained in this case that a court may not plausibly infer that originators systematically abandoned underwriting guidelines for the loans underlying the certificates in this case based only on information about the conduct of originators generally or even based on high OTD percentages for these particular originators. *See id.* at 1253-54. The inference does become plausible with allegations of specific underwriting conduct by these originators, as such allegations provide the necessary tie to the underwriting at issue in this case. *See id.* In the consolidated case, Judge Rogers reasoned that plaintiff's LTV and owner-occupancy analysis similarly made a "direct connection to the loan pools" for the particular certificates at issue. *See id.* at 1264. That analysis suggested independent misrepresentations, tied to the particular certificates, which combined with plaintiff's

6

other allegations to state a plausible claim based on the abandonment of underwriting guidelines.

Judge Rogers's reasoning is sound. In the present case, plaintiff's forensic analysis, based on the particular loans underlying the six dismissed offerings, support a plausible claim of misrepresentations involving the LTV and owner-occupancy ratios. Not only are those alleged misrepresentations independently actionable, they provide a connection to the particular certificates at issue and thus support a plausible claim based on the abandonment of underwriting guidelines. That is true for claims based on these six offerings, even without originator-specific allegations. Accordingly, the Court denies the motion by RBS and Wachovia to dismiss certain claims on this basis.[6]

### B. *Owner-Occupancy Ratio Allegations*

RBS, Nomura, and Wachovia also seek to dismiss any claims based on plaintiff's new allegations that owner-occupancy ratios were misrepresented. They argue that they cannot be liable merely for repeating misrepresentations by borrowers on the underlying loans. The Court has already rejected this same argument in a one of the similar cases

---

[6]Wachovia also argues that plaintiff's allegations are not sufficient to show that its forensic analysis involved a sufficient sample size for each certificate. At this stage, the Court rejects that argument, which is better presented in the context of a *Daubert* motion. Plaintiff has alleged an analysis based on 13,708 loans, a very significant portion of all of the loans involved in these certificates. Thus, the case of *Tsereteli v. Residential Asset Securitization Trust 1006-A8*, 697 F. Supp. 2d 546 (S.D.N.Y. 2010), cited by Wachovia, is easily distinguishable. *See id.* at 547-48 (inferences not plausible where based on inspection that did not involve loans at issue in the case and that involved only 22 out of 63,935 loans).

7

brought in this Court by plaintiff. *See National Credit Union Admin. Bd. v. Credit Suisse Sec. (USA) LLC*, __ F. Supp. 2d __, 2013 WL 1411769, at *15-16 (D. Kan. Apr. 8, 2013). The Court adopts that analysis in this case as well, and thus it denies the motion to dismiss plaintiff's owner-occupancy claims.

### C. *Actual and Expected Loss Allegations*

Finally, the moving defendants argue that plaintiff's amended allegations concerning actual and expected losses demand dismissal of its claims as implausible. The Court rejects this argument as well.

In its original complaint, plaintiff alleged as follows: "The actual losses to the mortgage pools underlying the RMBS U.S. Central purchased have exceeded expected losses so quickly and by so wide a margin (*see infra* Figure 2) that a significant portion of the mortgages could not have been underwritten as represented in the Offering Documents." Plaintiff defined "actual loss" as losses to the collateral pool because of borrower defaults, less any amounts recovered from foreclosure sales. Plaintiff alleged that estimates of expected loss, based on historical data for similar mortgage pools, are used to determine the amount of credit enhancement needed to achieve a particular credit rating. Thus, it appeared that plaintiff calculated expected losses for these certificates by working backwards from credit ratings, which are associated with a multiple that was then applied to the amount of an offering's available credit enhancement to determine an expected loss for that certificate. Plaintiff provided figures and graphs (Figure 2) showing that during the first 12 months after issuance, the "actual gross losses"

8

exceeded the "expected gross losses" (although those terms were not defined or explained separately from "actual loss" or "expected loss") for each offering by significant amounts. *See generally* Complaint ¶¶ 76-88.

In ruling on the original motions to dismiss, Judge Rogers noted these allegations as one of six categories of allegations on which plaintiff relied to support its claim that originators abandoned underwriting standards. *See RBS*, 900 F. Supp. 2d at 1232, 1253. As noted above, Judge Rogers found plaintiff's allegations to be sufficient with respect to certificates for which plaintiff had included originator-specific allegations.

Plaintiff altered these allegations in its amended complaint. Although plaintiff has not changed its figures and graphs, the amended complaint now makes clear that the "actual loss" and "expected loss" used for its comparison for each certificate actually represent "actual gross loss" and "expected gross loss," in the sense that they refer to the amount of principal remaining on defaulted loans *prior* to any recovery through a foreclosure sale. The amended complaint further explains that the expected gross loss figures were derived from the expected net loss figures (calculated as described in the original complaint) by applying an estimated recovery rate of 85% after default (by foreclosure sale and otherwise). Thus, plaintiff has changed its allegations concerning its "actual loss" versus "expected loss" comparison to show that it has actually compared gross, pre-recovery default figures, and not post-recovery figures as indicated in the original complaint. *See generally* First Amended Complaint ¶¶ 75-88.

Defendants argue that this amendment by plaintiff renders its claims implausible.

9

Defendants note that Judge Rogers relied on plaintiff's original allegations in concluding that plaintiff's allegations were sufficient, and that the amendment thus undermines that conclusion. Defendants stress that plaintiff's new allegations make clear that it has merely measured amounts in default at various times, and they argue that such pre-recovery figures say nothing about the amount of loss actually realized with respect to the loans. To emphasize that point, defendants point to reports indicating that the actual amount of realized losses for these certain certificates are far less that the "loss" figures cited by plaintiff (or are even zero).[7] Thus, defendants argue that plaintiff's comparison is meaningless.

The Court agrees that plaintiff's use of the term "loss" in this context is a bit misleading, as those figures actually represent only the amounts in default at particular times, before recovery allows the actual realized loss to be determined. Nevertheless, the Court agrees with plaintiff that the fact that actual defaults exceeded expected defaults within a short time after issuance has relevance. Although such evidence may not be as strong as a surge in actual over expected *losses*, it nevertheless does support the inference that the loans were not underwritten properly.

Defendants also attack plaintiff's method of calculating the expected "gross loss" or defaults, including its use of an 85% rate for recoveries and its method of calculating credit enhancement. Defendants note the absence of any allegations that plaintiff's

---

[7]The Court grants defendant RBS's request that the Court take judicial notice of certain materials, which request plaintiff has not opposed.

method is used by credit ratings agencies or by anyone else. The Court is not persuaded, however, that plaintiff's figures should be discarded as implausible. The fact that plaintiff may have used its own method of calculation, created just for this litigation, is not material, as parties often rely on their own experts' calculations to support their theories. Plaintiff is not required at this stage to justify its methodologies, as it must at the time of its expert disclosures pursuant to Fed. R. Civ. P. 26(a)(2). Defendants' objections to plaintiff's figures and estimates, including NovaStar's argument that plaintiff should have accounted for more forms of credit enhancement, are more appropriately raised in a *Daubert* motion.

Similarly, the Court rejects NovaStar's argument based on reports of the actual realized losses for its offering. A rise in defaults may support an inference of improper underwriting, whether or not the alleged misrepresentation ultimately caused damages. Moreover, any dispute about whether plaintiff's figures are accurate should not be resolved at the pleading stage.

Finally, the Court rejects defendants' argument that the weakening of plaintiff's allegations, with the change from a comparison of losses to a comparison of defaults, renders its claims implausible. Contrary to defendants' assertions, Judge Rogers's opinion does not indicate that he valued plaintiff's loss comparison allegations particularly highly or that he especially relied on those allegations in finding plaintiff's claims to be plausible. Those allegations were listed as part of the information on which plaintiff relied. Defendants have not argued that Judge Rogers erred in his original

11

conclusion. This Court concludes that the fact that the alleged losses were actually alleged defaults does not so weaken plaintiff's allegations, taken as a whole, including originator-specific allegations and/or a forensic analysis indicating misrepresentations about LTV and owner-occupancy ratios, that those allegations change from plausible to implausible. Accordingly, the Court denies this basis for defendants' motions to dismiss.[8]

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' various motions to dismiss the amended complaint (Doc. ## 144, 146, 150, 153) are **denied**.

IT IS SO ORDERED.

Dated this 12th day of September, 2013, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[8]Wachovia also reasserts its limitations arguments from its original motion to dismiss, in order not to waive those arguments. Those arguments are rejected pursuant to the Tenth Circuit's opinion in the interlocutory appeal and for the reasons cited by the Court in rejecting those arguments in this case and in the similar cases.