**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

**August 19, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as
liquidating agent of U.S. Central Federal
Credit Union and of Western Corporate
Federal Credit Union,

      Plaintiff - Appellee,

v.

NOMURA HOME EQUITY LOAN, INC.;
WACHOVIA CAPITAL MARKETS,
LLC, n/k/a Wells Fargo Securities, LLC;
WACHOVIA MORTGAGE LOAN AND
TRUST, LLC; NOVASTAR MORTGAGE
FUNDING CORP.; FINANCIAL ASSET
SECURITIES CORP.; RBS
ACCEPTANCE, INC., f/k/a Greenwich
Capital Acceptance, Inc.; RBS
SECURITIES, INC., f/k/a Greenwich
Capital Markets, Inc.,

      Defendants - Appellants,

and

FREMONT MORTGAGE SECURITIES
CORP.; INDYMAC MBS, INC.; LARES
ASSET SECURITIZATION, INC.;
RESIDENTIAL FUNDING MORTGAGE
SECURITIES II, INC.,

      Defendants.

------------------------------

SECURITIES INDUSTRY AND
FINANCIAL MARKETS

Nos. 12-3295 & 12-3298
(D.C. Nos. 2:11-CV-02340-JWL-JPO &
2:11-CV-02649-JWL-JPO)

ASSOCIATION; UNITED STATES OF
AMERICA,

     Amici Curiae.

_____

## JUDGMENT

_____

Before **KELLY**, **MCKAY**, and **MATHESON**, Circuit Judges.

_____

These cases originated in the District of Kansas.  The judgment of that court is affirmed.

Entered for the Court

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

August 19, 2014

Elisabeth A. Shumaker
Clerk of Court

_____

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as
liquidating agent of U.S. Central Federal
Credit Union and of Western Corporate
Federal Credit Union,

     Plaintiff - Appellee,

v.

NOMURA HOME EQUITY LOAN, INC.,
et al.,

     Defendants - Appellants,

and

FREMONT MORTGAGE SECURITIES
CORP., et al.,

     Defendants.

--------------------------------

SECURITIES INDUSTRY AND
FINANCIAL MARKETS
ASSOCIATION; UNITED STATES OF
AMERICA,

     Amici Curiae.

Nos. 12-3295 & 12-3298
(D.C. Nos. 2:11-CV-02340-JWL-JPO &
2:11-CV-02649-JWL-JPO)

_____

## ORDER
_____

Before **KELLY**, **MCKAY**, and **MATHESON**, Circuit Judges.
_____

These matters are before the court following our receipt of the United States Supreme Court's order granting certiorari, vacating our August 27, 2013 decision, and remanding for reconsideration in light of *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014). *See Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin. Bd.*, 134 S. Ct. 2818 (2014). The Supreme Court's judgment issued on July 18, 2014. On July 11, 2014 the parties filed supplemental briefs. In addition, on July 11, 2014 the United States filed a brief amicus curiae.

Upon consideration, we reinstate our original opinion, and also direct the clerk to issue our Opinion on Remand. Both our remand opinion and original decision shall be attached to this order. The mandate recalled on July 24, 2014 shall reissue forthwith.

Entered for the Court

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

**August 19, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as
liquidating agent of U.S. Central Federal
Credit Union and of Western Corporate
Federal Credit Union,

       Plaintiff - Appellee,

v.

NOMURA HOME EQUITY LOAN, INC.;
WACHOVIA CAPITAL MARKETS,
LLC, n/k/a Wells Fargo Securities, LLC;
WACHOVIA MORTGAGE LOAN AND
TRUST, LLC; NOVASTAR MORTGAGE
FUNDING CORP.; FINANCIAL ASSET
SECURITIES CORP.; RBS
ACCEPTANCE, INC., f/k/a Greenwich
Capital Acceptance, Inc.; RBS
SECURITIES, INC., f/k/a Greenwich
Capital Markets, Inc.,

       Defendants - Appellants,

   and

FREMONT MORTGAGE SECURITIES
CORP.; INDYMAC MBS, INC.; LARES
ASSET SECURITIZATION, INC.;
RESIDENTIAL FUNDING MORTGAGE
SECURITIES II, INC.,

       Defendants.

-------------------------------

SECURITIES INDUSTRY AND
FINANCIAL MARKETS

Nos. 12-3295 and 12-3298

ASSOCIATION; UNITED STATES OF
AMERICA,

           Amici Curiae.

_____

**OPINION ON REMAND**
_____

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. Nos. 2:11-CV-02340-JWL-JPO and 2:11-CV-02649-JWL-JPO)**

_____

Barry Levenstam, Jenner & Block, Chicago, Illinois  (Barbara S. Steiner, Matthew J.
Thomas, and Casey T. Grabenstein, Jenner & Block, Chicago, Illinois; W. Perry Brandt,
Bryan Cave LLP, Kansas City, Missouri; Arthur E. Palmer, Goodell, Stratton, Edmonds
& Palmer, LLP, Topeka, Kansas; Jeffrey J. Kalinowski and Richard H. Kuhlman, Bryan
Cave LLP, St. Louis, Missouri; William F. Alderman, Orrick, Herrington & Sutcliffe
LLP, San Francisco, California; Timothy B. Mustaine, Foulston Siefkin LLP, Wichita,
Kansas; Michael Thompson and Faiza Bergquist, Husch Blackwell LLP, Kansas City,
Missouri; and R. Alexander Pilmer, David I. Horowitz, and Tammy A. Tsoumas,
Kirkland & Ellis LLP, Los Angeles, California, with him on the briefs), appearing for
Appellants.

David C. Frederick, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.,
Washington, D.C. (George Zelcs, Korein Tillery, Chicago, Illinois; Michael J. McKenna,
General Counsel, and John K. Ianno, Associate General Counsel, National Credit Union
Administration, Alexandria, Virginia; Wan J. Kim, Gregory G. Rapawy, and Daniel V.
Dorris, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, D.C., with
him on the brief), appearing for Appellee.

Ira D. Hammerman and Kevin Carroll, Securities Industry and Financial
Markets Association, Washington, D.C., and Michael J. Dell and Aaron M. Frankel,
Kramer Levin Naftalis & Frankel LLP, New York, New York, filed an amicus brief for
Securities Industry and Financial Markets Association.

Stuart F. Delery, Assistant Attorney General, United States Department of Justice,
Washington, DC; Barry R. Grissom, United States Attorney, Office of the United States
Attorney for the District of Kansas, Kansas City, Kansas; and Mark B. Stern and Daniel
Tenny, Attorneys, Appellate Staff, Civil Division, United States Department of Justice,
Washington, DC, filed an amicus brief for the United States of America.

_____

Before **KELLY**, **McKAY**, and **MATHESON**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

On August 27, 2013, we concluded the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") established a universal time frame for the National Credit Union Administration ("NCUA") to bring any actions on behalf of credit unions placed into conservatorship or receivership, notwithstanding any pre-existing time periods applicable to other plaintiffs. *See Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246 (10th Cir. 2013) ("*NCUA*"). Because NCUA filed its federal securities claims in this case during that time frame, we determined its claims could proceed. *See id.* at 1266-67. On June 9, 2014, the Supreme Court decided *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014), which held that the federal commencement date established in an amended provision of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") for state personal injury or property damage actions preempted only state statutes of limitation, not statutes of repose. *See id.* at 2187-88. On June 16, 2014, the Supreme Court granted certiorari in this case, vacated our August 27, 2013 decision, and remanded for reconsideration in light of *CTS*. *See Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin. Bd.*, 134 S. Ct. 2818 (2014). We have considered the impact of *CTS* on this case and conclude it does not alter our original decision. We therefore reinstate our previous opinion accompanied by this opinion.

- 3 -

## I.  **BACKGROUND**

### A. *NCUA, FIRREA, and the NCUA Extender Statute*

Established in 1934, NCUA is an independent agency charged with regulating
federally chartered credit unions.  If NCUA finds that a credit union is insolvent or (in
some circumstances) undercapitalized, it must place the credit union in conservatorship
or liquidation and appoint itself as conservator or liquidating agent.  12 U.S.C.
§§ 1787(a)(1)(A), (a)(3)(A).  NCUA then steps into the shoes of the credit union and
succeeds to "all rights, titles, powers, and privileges of the credit union . . . ."  *Id.*
§ 1787(b)(2)(A)(i).

In the wake of the 1980s savings and loan crises, Congress enacted FIRREA to
"prevent[] the collapse of the industry, attack[] the root causes of the crisis, and restor[e]
public confidence."  *United States v. Winstar Corp.*, 518 U.S. 839, 844, 856 (1996).
FIRREA includes a provision governing NCUA enforcement actions titled "Statute of
limitations for actions brought by conservator or liquidating agent."  12 U.S.C.
§ 1787(b)(14).  Also known as the NCUA Extender Statute,[1] this provision reads:

> (A) In general
> Notwithstanding any provision of any contract, the applicable statute
> of limitations with regard to any action brought by the Board[2] as
> conservator or liquidating agent shall be—
>     (i) in the case of any contract claim, the longer of—

---

[1] FIRREA contains provisions often referred to as "extender statutes," which
define the time period for a government regulator to bring "any action" on behalf of a
failed financial organization.  One applies to NCUA, which we refer to as the "NCUA
Extender Statute" or simply the "Extender Statute."  *See* 12 U.S.C. § 1787(b)(14).

[2] Here, "the Board" refers to the NCUA Board.  12 U.S.C. § 1752(4).

- 4 -

      (I) the 6-year period beginning on the date the claim accrues; or

      (II) the period applicable under State law; and

    (ii) in the case of any tort claim, the longer of—

      (I) the 3-year period beginning on the date the claim accrues; or

      (II) the period applicable under State law.

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

    (i) the date of the appointment of the Board as conservator or liquidating agent; or

    (ii) the date on which the cause of action accrues.

*Id.* Thus, for "any [federal] tort claim" on behalf of a credit union to be timely, NCUA must sue within three years from either the date it places that credit union into conservatorship (or receivership) or the date on which the cause of action accrues. *See id.*

## B. *The Panel's Opinion in* NCUA v. Nomura

In 2006 and 2007, two federally chartered corporate credit unions—U.S. Central and WesCorp—purchased residential mortgage-backed securities ("RMBS") from the Appellants. *See NCUA*, 727 F.3d at 1252-53. In March 2009, NCUA placed the two credit unions into conservatorship based on "staggering losses" flowing from these investments. *Id.* at 1253. In June and November of 2011, within the three-year time frame required by the Extender Statute, NCUA sued several RMBS issuers on behalf of both credit unions, alleging federal securities torts[3] involving "materially false and

---

    [3] NCUA also alleged state securities torts, but those claims are not before this court on remand. *See NCUA*, 727 F.3d at 1254 nn.8-9.

misleading statements" in registration and prospectus materials. *Id.* The Defendants (Appellants here) moved to dismiss, asserting NCUA's claims were untimely under a different limitations period in the Securities Exchange Act of 1933. According to the Defendants, the Securities Act's three-year statute of repose (Section 13), which starts running when the security is offered or sold (rather than when NCUA placed the credit unions into conservatorship or discovered the violation), barred NCUA's federal securities claims. *See* 15 U.S.C. § 77m. The district court denied the motion, concluding FIRREA's Extender Statute applies to Section 13's three-year repose period.

On interlocutory appeal, this panel affirmed. We first determined the "plain meaning of the statute," which establishes "*the* applicable statute of limitations" for "*any* action brought by" NCUA. *NCUA*, 727 F.3d at 1257. We said this language "indicates that it applies to NCUA's Securities Act claim and that it supplants all other time limits, including Section 13's repose period." *Id.* We then analyzed how use of the term "statute of limitations" in the Extender Statute affects the statute's scope. We determined the surrounding language and context of FIRREA demonstrates that "the statute is most reasonably interpreted to govern 'any action' NCUA may bring—and to displace *all* 'statutes of limitations' in the broad sense of the term, which encompasses both ordinary statutes of limitations and statutes of repose." *Id.* at 1260. We gave Appellants "the benefit of the doubt and assume[d] there may be a modicum of ambiguity as to whether the Extender Statute covers statutes of repose." *Id.* at 1262. But based on a review of FIRREA's statutory purpose, the use of "statute of limitations" in federal legislation, and the use of "statute of limitations" in case law, we concluded "any such ambiguity is easily

- 6 -

resolved" and the Extender Statute displaces Section 13's three-year statute of repose. *Id.*[4]

Appellants petitioned the Supreme Court for a writ of certiorari. On June 16, 2014, the Supreme Court granted Appellants' petition, vacated this panel's previous opinion, and remanded for further consideration in light of its recently issued opinion in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014), which addressed whether an amended provision of CERCLA[5] preempts state statutes of repose.

### C. *CERCLA and Section 9658*

"Congress enacted CERCLA in 1980 'to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination.'" *CTS*, 134 S. Ct. at 2180 (quoting *Burlington N. & S.F.R. Co. v. United States*, 556 U.S. 599, 602 (2009)). "The Act provided a federal cause of action to recover costs of cleanup from culpable entities but not a federal cause of action for personal injury or property damage." *Id.* "Instead, CERCLA directed preparation of an expert report to determine 'the adequacy of existing common law and statutory remedies in providing legal redress for harm to man and the environment caused by the release of hazardous substances into the environment,' including 'barriers to

---

[4] Because of this conclusion, we declined to "consider whether we should apply the rule of 'construing ambiguous statutes of limitations in Government action in the Government's favor.'" *NCUA*, 727 F.3d at 1267 n.21 (quoting *O'Gilvie v. United States*, 519 U.S. 79, 92 (1996)). We observed, however, that we saw "no reason why this rule would not apply to Securities Act claims by the NCUA." *Id.*

[5] 42 U.S.C. § 9601 *et seq.*

recovery posed by existing statutes of limitations.'" *Id.* (quoting 42 U.S.C. § 9651(e)(1), (3)(F)).

Issued in 1982, the "Study Group Report" "noted the long latency periods involved in harm caused by toxic substances and 'recommend[ed] that all states that have not already done so, clearly adopt the rule that an action accrues when the plaintiff discovers or should have discovered the injury or disease and its cause.'" *Id.* at 2181 (quoting Senate Committee on Environment and Public Works, Superfund Section 301(e) Study Group, *Injuries and Damages from Hazardous Wastes—Analysis and Improvement of Legal Remedies*, 97th Cong., 2d Sess. pt. 1, at 256 (Comm. Print 1982) (hereinafter Study Group Report or Report)). "The Report further stated: 'The Recommendation is intended also to cover the repeal of the statutes of repose which, in a number of states[,] have the same effect as some statutes of limitation in barring [a] plaintiff's claim before he knows that he has one.'" *Id.* (quoting and altering Study Group Report pt. 1, at 256).

Although the Study Group Report called upon states to change their laws, in 1986 Congress amended CERCLA "to add the provision now codified in § 9658," *id.*, which provides in pertinent part as follows:

(a) State statutes of limitations for hazardous substance cases

(1) Exception to State statutes

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required

- 8 -

commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

(2) State law generally applicable

Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.

. . . . .

(b) Definitions

. . . . .

(2) Applicable limitations period

The term "applicable limitations period" means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought.

(3) Commencement date

The term "commencement date" means the date specified in a statute of limitations as the beginning of the applicable limitations period.

(4) Federally required commencement date

(A) In general

Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

(B) Special rules

In the case of a minor or incompetent plaintiff, the term "federally required commencement date" means the later of the date referred to in subparagraph (A) or the following:

- 9 -

> (i) In the case of a minor, the date on which the minor reaches the age of majority, as determined by State law, or has a legal representative appointed.
>
> (ii) In the case of an incompetent individual, the date on which such individual becomes competent or has had a legal representative appointed.

42 U.S.C. § 9658.

Section 9658 generally provides that "the statute of limitations established under State law shall apply in all actions brought under State law" for personal injury or property damage stemming from industrial pollution, *id.* § 9658(a)(2), except when "the applicable limitations period" under state law "provides a commencement date which is earlier than the federally required commencement date," *id.* § 9658(a)(1).  In such cases, instead of the state law commencement date, the "period shall commence at the federally required commencement date"—that is, "the date the plaintiff knew (or reasonably should have known)" that his personal injury or property damage stemmed from a "hazardous substance or pollutant or contaminant."  *Id.* § 9658(a)(1) & (b)(4)(A). Despite the Study Group Report's distinction between "statutes of limitations" and "statutes of repose," however, § 9658 did not employ the term "statute of repose."

### D. *The Supreme Court's Decision in* CTS Corp. v. Waldburger

In *CTS*, property owners in North Carolina brought a state-law nuisance action based on well contamination against CTS Corporation, which ran an electronics plant on their land from 1959 to 1985.  *CTS Corp.*, 134 S. Ct. at 2181.  Although CTS sold the property in 1987, the plaintiffs did not discover their well water was contaminated until

- 10 -

2009. *Id.* They filed suit in 2011. *Id.* CTS moved to dismiss the claim under North Carolina's statute of repose, which bars any tort suit brought more than 10 years after the last culpable act of the defendant. N.C. Gen. Stat. Ann. § 1-52(16); *CTS Corp.*, 134 S. Ct. at 2181. The district court granted CTS's motion to dismiss. *CTS Corp.*, 134 S. Ct. at 2181. On appeal, the Fourth Circuit reversed, concluding that CERCLA's federal commencement date preempted North Carolina's statute of repose. *See id.* at 2181-82.

The Supreme Court granted certiorari and reversed. Because "[i]t is undoubted that the discovery rule in § 9658 pre-empts state statutes of limitations that are in conflict with its terms," the Court limited its focus to "whether § 9658 also pre-empts state statutes of repose," *id.* at 2180—that is, whether § 9658's federal commencement date modifies the starting date under state law for both statutes of limitation and statutes of repose when it refers to "the 'applicable limitations period,'" *id.* at 2185 (quoting 42 U.S.C. § 9658). The Court concluded (for the reasons discussed below) that the "applicable [state] limitations period" displaced by CERCLA's federal commencement date does not include state statutes of repose, and thus the plaintiffs' claims were barred under North Carolina's 10-year statute of repose.

## II. **DISCUSSION**

We conclude the Court's decision in *CTS* does not alter our original conclusion that NCUA's federal claims were timely. First, (A) the Extender Statute and § 9658 are fundamentally different. The Extender Statute plainly establishes a universal time frame for all actions brought by NCUA, notwithstanding any other limitations frameworks governing other plaintiffs' claims. Section 9658 addresses only when the accrual date for

state hazardous waste claims alleging personal injury or property damage begins to run. Second, (B) conventional tools of statutory construction confirm the Extender Statute replaces all pre-existing time limits that otherwise may have applied to NCUA claims.

### A. *CTS does not change this panel's principal conclusion that the Extender Statute sets a universal time frame for the NCUA to bring any claims.*

In *CTS*, the Supreme "Court note[d] first that § 9658, in the caption of subsection (a), characterizes pre-emption as an 'exception' to the regular rule" that "'State law [is] generally applicable.'" 134 S. Ct. at 2185 (quoting 42 U.S.C. § 9658(a)(1) & (a)(2)) (brackets omitted). "Under this structure," the Court reasoned, "state law is not pre-empted unless it fits into the precise terms of the exception." *Id.*

The text and structure of the Extender Statute are fundamentally different from § 9658.[6] The Extender Statute creates "*the* applicable statute of limitations" for "*any action* brought by" NCUA on behalf of a failed credit union. 12 U.S.C. § 1787(b)(14)(A) (emphasis added). The Extender Statute on its face gives the NCUA its own time limits to file enforcement actions on behalf of credit unions in conservatorship or receivership. It specifies the time limits for "any action[s]" brought by NCUA, irrespective of whether the time limits in the statutes on which such "action[s]" are based (such as the Securities Act) might expire sooner for other plaintiffs, and irrespective of whether those time limits

---

[6] Appellants make a threshold analytical misstep by equating the statute at issue in this case with the statute in *CTS* and proceeding to argue that the results in the two cases should be the same. But rather than being "analogous" or "quite similar," Aplt. Supp. Br. at 1-2, the Extender Statute and § 9658 are so different that *CTS* does not alter our primary conclusion that the Extender Statute plainly establishes a universal time frame for all NCUA enforcement actions.

are statutes of limitations or repose. Put another way, by establishing all-purpose time limits for any actions NCUA may wish to pursue, the Extender Statute "displaces *all* preexisting limits on the time to bring suit, whatever they are called." Aplee. Supp. Br. at 4.

Section 9658 of CERCLA has a completely different structure. Rather than setting its own time limit to bring a personal injury or property damage claim based on hazardous waste, § 9658 recognizes that the time limits in state statutes apply. It further provides the applicable state limitations period starts to run no earlier than the "federally required commencement date," 42 U.S.C. § 9658(a)(1), which is defined in terms of accrual[7]—when the plaintiff knew or should have known of the hazardous waste injury. The "federally required commencement date" thus functions as an "'exception' to the regular rule," *CTS Corp.*, 134 S. Ct. at 2185, that "the statute of limitations established under State law shall apply . . . ." 42 U.S.C. § 9658.

Unlike § 9658's federal commencement date, the limitations framework provided in the Extender Statute does not establish a narrow "'exception' to the regular rule." *CTS Corp.*, 134 S. Ct. at 2185 (brackets omitted). Instead, it creates the exclusive time framework for all NCUA enforcement actions and replaces all other time periods.

---

[7] Appellants argue that because the Extender Statute also uses the word "accrue," it must affect only statutes of limitation and not statutes of repose contained in other statutes on which NCUA relies to bring enforcement actions. *See* Aplt. Supp. Br. at 5-6. Appellants fail to recognize the Extender Statute sets time limits for any NCUA enforcement actions, and whether the time framework for NCUA actions includes an accrual feature does not change that it replaced other time limits, whether they are called statutes of limitations or repose.

Accordingly, unlike the applicable state limitations periods modified by § 9658's federal commencement date, the time limits displaced by the Extender Statute need not "fit[] into [its] precise terms . . . ." *Id.*

The contrast between the two statutes is stark. The time limits for the federal claims at issue under the Extender Statute are contained within the Extender Statute itself and apply only to NCUA actions. The time limits under § 9658 for personal injury and property damage actions, on the other hand, are largely contained in state statutes outside of § 9658 and apply to all plaintiffs. As the United States highlighted in its *CTS* amicus brief:

> Section 9658 contrasts markedly with other statutes [such as the Extender Statute, § 1787(b)(14),] in which Congress chose to override *all* otherwise applicable time limitations. . . . In one set of such statutes [including § 1787(b)(14)], Congress created a new, exclusive time limitation applicable to claims brought by specified federal agencies as conservator, receiver, or liquidating agent for failed financial institutions. . . . [In § 9658], by contrast, Congress did not enact a new time limitation to supersede all others. Instead, Congress altered particular preexisting state statutes of limitations in only one limited respect—by changing the date on which the cause of action accrued. Congress otherwise left time limitations unchanged, explicitly stating that those time limitations continue to apply "[e]xcept" to the extent that they are specifically superseded by federal law.

Br. for the United States as Amicus Curiae at 22-23, *CTS Corp. v. Waldburger*, No. 13-339 (U.S. filed Mar. 3, 2014) ("U.S. *Waldburger* Br."), *available at* 2014 WL 828057 (quoting and altering 42 U.S.C. § 9658(a)(2)).

In light of the fundamental differences between § 9658 and the Extender Statute, we reaffirm our original conclusion, which is sufficient to resolve the instant case: the

- 14 -

Extender Statute plainly establishes its own exclusive time limits for NCUA enforcement actions and displaces all others, including statutes of limitations and repose.

   B.  **CTS *does not change our conclusion regarding the scope of the Extender Statute***

1.  **The panel's opinion**

   In our original opinion, after determining the plain meaning of the Extender Statute as establishing a universal time limit for all NCUA lawsuits, we employed tools of statutory construction—surrounding text, statutory context, and statutory purpose—to confirm that meaning.  In doing so, we "assume[d] for the sake of discussion" the plausibility of Appellants' contention that the breadth of the term "statute of limitations" in the Extender Statute may affect the scope of its universal time frame.  *NCUA*, 727 F.3d at 1258.  We then "examine[d] the term 'statute of limitations' more closely."  *Id.*  After acknowledging that "standing alone, the words 'statute of limitations' may be ambiguous" and may or may not include statutes of repose, we determined the Extender Statute's surrounding language, statutory context, and statutory purpose compel a "broad" interpretation of the term that includes statutes of repose.  *Id.* at 1258-60.[8]  We therefore concluded that even under Appellants' aforementioned plausible contention, the Extender Statute's universal time frame displaces statutes of repose.  *CTS* does not change that analysis.

---

   [8] Conversely, by "narrow," we mean an interpretation of "statute of limitations" that does not include "statutes of repose."

2.  **Use of the term "statute of limitations"**

This panel's original opinion consulted dictionary definitions, case law, and treatises to determine the ordinary meaning of "statute of limitations" when Congress enacted FIRREA in 1989.  *See NCUA*, 727 F.3d at 1258-59.  Although we believed our "discussion support[ed] the broader meaning of 'statute of limitations,'" we acknowledged "that, standing alone, the words 'statute of limitations' may be ambiguous."  *Id.* at 1259; *see also id.* n.14 ("Courts have noted the historically ambiguous and overlapping use of these terms." (citing cases)).  We therefore considered other factors specific to FIRREA to determine whether the Extender Statute used the term "statute of limitations" in the broad or narrow sense.

Similarly, in *CTS*, the Supreme Court analyzed § 9658's use of the term "statute of limitations."  The Court found it "instructive, but . . . not dispositive" that "§ 9658 uses the term 'statute of limitations'" but "not the term 'statute of repose'" because "'statute of limitations' has acquired a precise meaning, distinct from 'statute of repose' . . . ."  *CTS Corp.*, 134 S. Ct. at 2185.[9]  Like this panel's original opinion, however, the Court

_____

[9] In doing so, the Court rejected the plaintiffs' reliance on a 1979 edition of Black's Law Dictionary that "likely reflects an earlier, broader usage in which the term 'statute of repose' referred to all provisions delineating the time in which a plaintiff must bring suit."  *CTS Corp.*, 134 S. Ct. at 2186.

Our original opinion cited that edition favorably in observing the distinction between "statutes of limitations" and "statutes of repose" has not always been clear.  *See NCUA*, 727 F.3d at 1258-59.  But we also acknowledged that "[t]he next edition of Black's Law Dictionary, published in 1994, provided a separate entry for 'Statute of repose' that addressed the distinctions between repose and limitations periods," *id.* at 1259 n.13 (citing Black's Law Dictionary 1411 (6th ed. 1994)), and we ultimately

Continued. . .

- 16 -

recognized that "the term 'statute of limitations' is sometimes used in a less formal way" and "can refer to any provision restricting the time in which a plaintiff must bring suit." *Id.* at 2185.  The Court further acknowledged that "Congress has used the term 'statute of limitations' when enacting statutes of repose." *Id.*

Faced with this ambiguity, the Supreme Court looked to factors specific to CERCLA to conclude § 9658 preempted only state statutes of limitations and not statutes of repose. *See id.* (observing that "the Court must proceed to examine other evidence of the meaning of the term 'statute of limitations' *as it is used in § 9658*" (emphasis added)). As we discuss below, none of those factors changes our analysis of FIRREA's Extender Statute, whose surrounding language, statutory context, and statutory purpose compel a broad reading of the term "statute of limitations." *See* U.S. *Waldburger* Br. at 22-23 ("The text, context, and history of [several provisions creating a new limitations period for federal agencies, including the Extender Statute,] make clear that Congress intended an exclusive, uniform time limitation to apply to actions brought by the designated federal agencies.").[10]

_____

concluded (as did the Court in *CTS*) that the term "statute of limitations" can be ambiguous standing alone.  *See id.* at 1259.

[10] Appellants note our original opinion cited two cases that the Supreme Court explicitly overruled, *see Waldburger v. CTS Corp.*, 723 F.3d 434 (4th Cir. 2013), *rev'd*, 134 S. Ct. 2175 (2014), and *McDonald v. Sun Oil Co.*, 548 F.3d 774 (9th Cir. 2008), *abrogated by CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014).  *See* Aplt. Suppl. Br. at 10.  Although we agree those cases' conclusion that CERCLA's federal commencement date preempts state statutes of repose is no longer valid, this panel relied upon those cases for the uncontroversial proposition that the term "statute of limitations" can be ambiguous and to point out an example of how courts had interpreted CERCLA's

Continued. . .

a. *Surrounding language*

Our original opinion looked first to the Extender Statute's surrounding language to shed light on the scope of the term "statute of limitations."  We recognized the Extender Statute's new limitations framework includes the concept of accrual, which is "generally associated with the narrow meaning of 'statute of limitations.'"  *NCUA*, 727 F.3d at 1260. But we further observed "the Extender Statute also includes the concept of repose."  *Id.* Specifically, the Extender Statute provides that the limitations period begins to run either (i) on "the date of the appointment of [NCUA] as conservator or liquidating agent" or (ii) when "the cause of action accrues."  *See* 12 U.S.C. § 1787(b)(14)(B)(i) & (ii).  Option (i) invokes the concept of repose because it is based on when a specific event occurs, regardless of whether the plaintiff is aware of the injury.[11]

The statute in *CTS* is completely different.  Section 9658 exclusively adopts a discovery-based accrual framework and contains no such concept of repose, which

_____

extender statute.  *See NCUA*, 727 F.3d at 1258, 1266 n.20.  Neither decision was critical to this panel's conclusion that FIRREA's Extender Statute, which is fundamentally different from CERCLA's, employs "statute of limitations" in the broad sense.

[11] Appellants argue the Extender Statute does not invoke the concept of repose because "a statute of repose is measured from the 'last culpable act or omission *of the defendant*,'" rather than "an act of the *plaintiff* NCUA."  Aplt. Suppl. Br. at 12 (quoting and emphasizing *CTS Corp.*, 134 S. Ct. at 2182).  We disagree.  Although a statute of repose may begin to run from the last culpable act or omission of the defendant, *see CTS Corp.*, 134 S. Ct. at 2182, its distinguishing feature from a statute of limitation is that "the period specified in a statute of repose begins *when a specific event occurs*, regardless of whether a cause of action has accrued or whether any injury has resulted."  54 C.J.S. *Limitations of Actions* § 7 (2014) (emphasis added); *see also* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1056 (3d ed. 2010) (observing that "the point of commencement for the applicable statute of repose is *commonly* the date of the last act or omission that caused the plaintiff's injury" (emphasis added)).

- 18 -

suggests it can only be read to displace statutes of limitations and not statutes of repose. The provision defines the "federally required commencement date" as "the date the plaintiff knew (or should reasonably have known) about his or her injury." *See* 42 U.S.C. § 9658(b)(4)(A). Statutes of limitations in state actions therefore begin to run under CERCLA's time limits only "when a plaintiff discovers, or reasonably should have discovered, that the harm in question was caused by the contaminant." *CTS Corp.*, 134 S. Ct. at 2180.

The Court's discussion in *CTS* about § 9658's surrounding language does not change our original conclusion regarding the Extender Statute.

    i.  Use of the singular to describe the relevant "period"

In *CTS*, the Court observed that Congress's use of a singular term—"period"—to identify the object (as opposed to objects) of federal preemption suggests how far it intended § 9658's federal commencement date to reach. Because "describing the covered [state] *period*" modified by the federal commencement date "in the singular" "would be an awkward way to mandate the pre-emption of two different time periods with two different purposes," the Court concluded Congress must have intended to leave state repose periods alone. *Id.* at 2186-87 (emphasis added); *see also id.* at 2186 (discussing "the applicable limitations *period*," "such *period* shall commence," and "the *statute* of limitations established under State law" (emphasis added)). In other words, if Congress had meant the federal commencement date to displace both statutes of limitations and statutes of repose, it would have used the term "periods" as the object of federal preemption.

The Extender Statute does not use the term "period" in a comparable way.

Appellants nonetheless point to this passage:

(A) In general

. . . . .

[T]he applicable statute of limitations with regard to any action brought by the [NCUA] as conservator or liquidating agent shall be—

    (i) in the case of any contract claim, the longer of—
        (I) the 6-year period beginning on the date the claim accrues; or
        (II) the *period* applicable under State law; and
    (ii) in the case of any tort claim, the longer of—
        (I) the 3-year period beginning on the date the claim accrues; or
        (II) the *period* applicable under State law.
(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—
    (i) the date of the appointment of the Board as conservator or liquidating agent; or
    (ii) the date on which the cause of action accrues.

12 U.S.C. § 1787(b)(14) (emphasis added).

Unlike § 9658, however, which employs the word "period" in the singular to describe the "applicable *limitations* period," 42 U.S.C. § 9658(a)(1) (emphasis added), the Extender Statute refers generally to the "period applicable under State law," 12 U.S.C. § 1787(b)(14)(A)(i)(II) & (ii)(II), without using the word "limitations" to modify "period." Moreover, unlike § 9658, which employs the term "applicable limitations period" to identify the state law time frame modified by the federal commencement date (that is, the specific object of federal preemption), the Extender Statute uses "period applicable under State law" to help construct a new exclusive time framework for NCUA

- 20 -

actions that replaces all pre-existing time limits (including repose periods).  Whether the state period used to construct this framework is one of limitations or repose has no bearing on whether the new Extender Statute framework itself displaces statutes of repose.

Finally, the Extender Statute's remaining timing provisions, which do not appear in § 9658, should not be ignored.  The "period applicable under State law" in the Extender Statute only applies if it is longer than three (or six, for contract claims) years from the later of (i) the date of the NCUA's appointment as conservator or liquidating agent or (ii) the date on which the cause of action accrues.  *See* 12 U.S.C. § 1787(b)(14)(B).[12]  Because the Extender Statute provides this framework—which, as discussed above, includes the concept of repose—independent of the "period applicable under State law," the use of the word "period" does not exclude statutes of repose from the Extender Statute's scope.

### ii.  Use of the term "civil action"

The *CTS* Court also pointed to § 9658's definition for the preempted "applicable limitations period":  "the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought."  42 U.S.C. § 9658(b)(2).  Although the Court acknowledged that "in a literal sense a statute of repose limits the time during which a suit 'may be brought' because it provides a point after which a suit cannot be brought," it found persuasive § 9658's use of the term "civil

---

[12] It plainly does not apply to the federal securities claims at issue in this case.

action," which is a "'civil suit stating a legal cause of action.'"  134 S. Ct. at 2187

(quoting Black's Law Dictionary 32-33, 222 (9th ed. 2009)).  A "statute of repose," by

contrast, "is not related to the accrual of any cause of action" and "can prohibit a cause of

action from coming into existence."  *Id.* (quotations omitted).  The Court therefore

concluded the definition of the preempted "'applicable limitations period' . . . is best read

to encompass only statutes of limitations, which generally begin to run after a cause of

action accrues and so always limit the time in which a civil action 'may be brought.'"  *Id.*

Here, unlike § 9658, the Extender Statute does not use the term "civil action"; it

refers more broadly to "any action."   12 U.S.C. § 1787(b)(14)(A).  The term "any

action" also appears in § 9658, but the Court did not address the phrase "any action" in

*CTS*, and we otherwise do not understand the *CTS* disposition to turn on the "civil action"

point alone.[13]  The Court relied on several points for its analysis, including the accrual

character of § 9658.  As discussed above, § 9658's surrounding language, unlike the

Extender Statute, is cast exclusively in terms of the discovery rule for accrual, which

applies to the narrow understanding of "statute of limitations."  We therefore do not think

the "civil action" reference in *CTS* overcomes the reasons we have identified to show that

---

[13] Other federal statutes describe "action[s]" that may be brought within repose
periods.  *See* 15 U.S.C. § 78u-6(h)(1)(B)(iii) (providing that an "action under" Dodd-
Frank's whistleblower retaliation provision "may not in any circumstance be brought
more than 10 years after the date on which the violation occurs"); 28 U.S.C. § 1658
(providing that "a private right of action" involving securities fraud "may be brought not
later than the earlier" of "2 years after the discovery of the facts constituting the
violation" or "5 years after such violation").

the time framework in the Extender Statute replaces other previously-applicable time periods, including repose limits.

### iii. Equitable tolling

The *CTS* Court said "[a]nother and altogether unambiguous textual indication that § 9658 does not pre-empt statutes of repose is that § 9658 provides for equitable tolling for 'minor or incompetent plaintiff[s].'" 134 S. Ct. at 2187 (quoting and altering § 9658(b)(4)(B)). Because a "critical distinction between statutes of limitations and statutes of repose is that a repose period is fixed and its expiration will not be delayed by estoppel or tolling," "the inclusion of a tolling rule in § 9658 suggests that the statute's reach is limited to statutes of limitations, which traditionally have been subject to tolling." *Id.* at 2187-88 (quotations omitted). Here, unlike § 9658, FIRREA's Extender Statute does not mention equitable tolling.

\*       \*       \*

In sum, the Extender Statute's surrounding language differs considerably from § 9658's in that it features the concept of repose, uses the word "period" differently, and lacks a tolling provision. The Court's analysis of the terms "period" and "civil action," as well as the tolling provision in § 9658, cannot be extended to the Extender Statute because its text and structure are fundamentally different from § 9658. The Court's decision in *CTS* does not alter our original conclusion that the term "statute of limitations" should be construed broadly to include statutes of repose.

b. *Statutory context*

The panel's original opinion also considered FIRREA's statutory context in concluding the Extender Statute employs the broad meaning of "statute of limitations." *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." (citations omitted)).

Section 1787 refers to "statute of limitations" or "statute of limitation" in six provisions, including the Extender Statute.[14]  The word "repose" does not appear.  Three subsections set deadlines for appealing NCUA's denial of a claim, without allowing for accrual or tolling—yet all are clearly labeled "statutes of limitations."  *See* 12 U.S.C.

---

[14] Besides the Extender Statute, the term "statute of limitation(s)" appears in the following provisions:  12 U.S.C. § 1787(b)(5)(F)(i) (tolls "any applicable statute of limitations" on external claims against a credit union when the claimant files a claim with NCUA); *id.* at § 1787(b)(6)(B) (sets a 60-day "[s]tatute of limitations" for federal court review or administrative appeal of external claims denied by NCUA); *id.* at § 1787(b)(8)(D) (sets 30-day "[s]tatute of limitations" for federal court review or administrative appeal of external claims denied by NCUA under expedited claims process); *id.* at § 1787(b)(8)(E)(i) (allows tolling of "any applicable statute of limitations" on external claims against a credit union when claimant files a claim with NCUA under expedited claims process); *id.* at § 1787(d)(4) (sets a "[s]tatute of limitations" of "not later than 60 days" for filing a federal court challenge to NCUA's denial of claim for payment of an insured deposit).

- 24 -

§§ 1787(b)(6)(B), (b)(8)(D), (d)(4).[15]  Two references to statutes of limitations in § 1787 that provide for tolling of "any applicable statute of limitation" support the narrow interpretation adopted in *CTS*, but these tolling provisions apply only when an *external claimant*—not the NCUA itself—files a claim with NCUA against a failed credit union. *See id.* §§ 1787(b)(5)(F)(i), (b)(8)(E)(i).  Moreover, "[t]hese provisions are consistent with the broad definition of 'statute of limitations' because the broad encompasses the narrow . . . ." *NCUA*, 727 F.3d at 1261.

Taken together, Congress's use of the term in the broad sense in other FIRREA provisions suggests it should be construed broadly in the Extender Statute.  Nothing in *CTS*, which did not consider the meaning of "statute of limitations" within CERCLA's broader statutory context, undermines that conclusion.

c. *Statutory purpose*

In our original opinion, we considered FIRREA's legislative history and stated purpose to resolve "any lingering ambiguity" about the Extender Statute's broad use of the term "statute of limitations."  *NCUA*, 727 F.3d at 1262; *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80 (2004) (looking to statutory purpose to interpret an ambiguous statute).  After reviewing the statements of FIRREA's sponsor and the statute's stated purpose, we concluded "the legislative purpose of FIRREA supports the conclusion that the Extender Statute applies to statutes of repose." *NCUA*,

---

[15] Appellants argue these provisions "merely set procedural deadlines," Aplt. Suppl. Br. at 13, but Congress referred to them as "statute[s] of limitations," which informs how broadly Congress meant the term to be employed in the Extender Statute.

727 F.3d at 1264.  Nothing in *CTS*'s discussion of CERCLA's legislative history and purpose alters that conclusion.

i.  Legislative history

Our original opinion considered FIRREA's legislative history in confirming our conclusion that the Extender Statute employs the broad meaning of "statute of limitations" and displaces statutes of repose.  In submitting FIRREA's conference report to the Senate, the law's sponsor said the extender provisions should "be construed to maximize potential recoveries . . . by preserving *to the greatest extent permissible by law* claims [filed by the Government] that would otherwise have been lost due to the expiration of hitherto applicable limitations period."  135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (statement of Senator Donald W. Riegle, Jr., then-Chairman of the Committee on Banking, Housing, and Urban Affairs and sponsor of FIRREA in the Senate, regarding the FDIC extender statute, which is identical to the NCUA Extender Statute) (emphasis added); *see also UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173, 1178 (10th Cir. 1999) ("In interpreting a statute, we accord substantial weight to statements by its sponsors concerning purpose and scope.").

As we noted in our original opinion, "[w]e have previously relied on this statement and similar statements in the legislative record when interpreting the purpose and scope of the FIRREA extender statutes."  *NCUA*, 727 F.3d at 1263 (citing *UMLIC-Nine Corp.*, 168 F.3d at 1178 (relying on same statement by Sen. Riegle)).  So have other circuits. *See SMS Fin., LLC v. ABCO Homes, Inc.*, 167 F.3d 235, 242 n.21 (5th Cir. 1999) (relying on similar comments concerning the purpose of the extender statutes); *FDIC v. N.H. Ins.*

*Co.*, 953 F.2d 478, 486-87 & n.2 (9th Cir. 1991) (relying on the same statement by Sen. Riegle).

In *CTS*, the Supreme Court noted the Study Group Report's recommendation that states replace both their "statutes of limitations" and "statutes of repose" with more generous time periods.  It concluded Congress would have used both terms when it amended CERCLA if it had wanted to preempt statutes of repose.  *See* 134 S. Ct. at 2186. Commissioned by Congress in advance of CERCLA's 1986 amendment, the 1982 Report "acknowledged that statutes of repose were not equivalent to statutes of limitations and that a recommendation to pre-empt the latter did not necessarily include the former." *Id.* at 2186.  The Supreme Court concluded that by "clearly urg[ing] the repeal of statutes of repose as well as statutes of limitations," the "Report did what [§ 9658] does not:  It referred to statutes of repose as a distinct category.  And when Congress did not make the same distinction, it is proper to conclude that Congress did not exercise the full scope of its pre-emption power." *Id.*

Unlike CERCLA's 1986 amendment, there is no evidence Congress distinguished between statutes of limitation and statutes of repose when enacting FIRREA in 1989.[16] FIRREA's legislative history lacks anything remotely similar to the Study Group Report prepared in advance of CERCLA's amendment.  And nothing else in FIRREA's

---

[16] More fundamentally, Appellants' argument that Congress was aware of the difference between statutes of limitations and repose when it passed the Extender Statute, *see* Aplt. Supp. Br. at 2-4, 6-7, 10-12, misses the Extender Statute's core feature:  it established a universal time frame for NCUA enforcement actions.  *See supra*, Part II.A.

legislative history suggests Congress meant to use the term "statute of limitations"

narrowly in the Extender Statute to exclude statutes of repose.[17]  Nor does Congress's

awareness of the distinction when it amended CERCLA in 1986 mean that it had this

distinction in mind when it enacted FIRREA in 1989.  Despite the Study Group Report's

reference to "statutes of repose," Congress has used the term "statute of limitations" or

related terms in legislation several times after CERCLA and FIRREA to encompass

repose periods.[18]

---

[17] Indeed, the statement of FIRREA's sponsor suggests precisely the opposite.  In referring to the extender statutes' displacement of "applicable limitations periods," 135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989), Senator Riegle cited *International Union of Elec., Radio and Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 243 (1976).  In that case, the Supreme Court considered whether Congress's extension of Title VII's 90-day "*limitations period*," which begins to run when the plaintiff is discharged and therefore invokes the concept of repose, applied retroactively to the plaintiff's claim.  *Id.* at 231-32 & n.1. The Court first rejected the plaintiff's equitable tolling arguments, one of which asserted the interests of justice outweighed the limitations period's "*policy of repose*."  *Id.* at 237-38 & n.11 (quotations omitted) (emphasis added).  The Court nevertheless concluded that Congress could—and did— retroactively extend the "limitations period" governing the plaintiff's claim from 90 to 180 days when it amended Title VII in 1972.  *See id.* at 243 (emphasis added).  The reference to this case in FIRREA's legislative history alongside the term "limitations periods" suggests the Extender Statute displaces "statute of limitations" broadly, including statutes of repose.

[18] *See, e.g.*, Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, § 922(a), 124 Stat. 1376, 1841, 1846 (2010) (codified at 15 U.S.C. § 78u-6(h)(1)(B)(iii)(I)(aa); stating, in a subsection entitled "Statute of limitations," that an action "may not be brought" "more than 6 years after the date on which the violation" occurred); *CTS Corp.*, 134 S. Ct. at 2185 (acknowledging § 78u-6(h)(1)(B)(iii)(I)(aa) is a "statute of repose . . . in a provision entitled 'Statute of limitations'"); Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, tit. VIII, § 804(a), 116 Stat. 745, 801 (2002) (codified at 28 U.S.C. § 1658; referring to two-year limitations period and five-year repose period as "Time limitations on the commencement of civil actions arising under Acts of Congress"); General Aviation Revitalization Act of 1994, Pub. L. No. 103-298, 108 Stat. 1552, 1552-53 (1994) (codified at 49 U.S.C. § 40101

Continued. . .

ii.  <u>Stated purpose</u>

In our original opinion, we also considered FIRREA's stated purpose (as articulated by the Supreme Court and the statute itself) in concluding "the legislative purpose of FIRREA supports the conclusion that the Extender Statute applies to statutes of repose." *NCUA*, 727 F.3d at 1264.  Congress enacted FIRREA to "prevent[] the collapse of the industry, attack[] the root causes of the crisis, and restor[e] public confidence." *Winstar Corp.*, 518 U.S. at 856.  The preamble to the bill described FIRREA as "An Act to reform, recapitalize, and consolidate the Federal deposit insurance system, to enhance the regulatory and enforcement powers of Federal financial institutions regulatory agencies, and for other purposes."  FIRREA, Pub. L. No. 101-73, 103 Stat. 183 (1989).  FIRREA's stated purpose also included "[t]o strengthen the enforcement powers of Federal regulators of depository institutions," *id.* § 101(9), and "[t]o strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors," *id.* § 101(10).

In *CTS*, the Court rejected the plaintiffs' argument that "pre-emption of statutes of repose advances § 9658's purpose, namely to help plaintiffs bring tort actions for harm caused by toxic contaminants."  134 S. Ct. at 2188.  The Court cautioned that "the level of generality at which the statute's purpose is framed affects the judgment whether a

---

note; describing eighteen-year repose period as a "limitation period"); National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, tit. III, § 311(a), 100 Stat. 3755, 3769-70 (codified at 42 U.S.C. § 300aa-16(a); creating several time periods under heading "Limitations of actions," including one that begins to run based on the statute's effective date).

specific reading will further or hinder that purpose.  CERCLA, it must be remembered, does not provide a complete remedial framework."  *Id.*  On the contrary, § 9658 "leaves untouched States' judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence, and other important rules governing civil actions."  *Id.* at 2188.  "[I]n light of Congress' decision to leave those many areas of state law untouched," the Supreme Court concluded the plaintiffs failed to show that "statutes of repose pose an unacceptable obstacle to the attainment of CERCLA's purposes."  *Id.*[19]

Here, unlike CERCLA's incomplete "remedial framework," *id.* at 2188, FIRREA's statutory purpose (as explained by its sponsor, the Supreme Court, and in the statute itself), though generally stated, demonstrates Congress meant any ambiguity in the term "statute of limitations" to be construed broadly.  When Congress enacted the Extender Statute, it not only gave the NCUA the time it needs to do its work, it also relieved the NCUA from the burden of complying with multiple federal and state statutes of limitations by giving it a statute of limitations of its own.  It strains common sense to think Congress would have saddled the NCUA with having to comply with multiple federal and state statutes of repose.  As this panel observed in its original opinion, "the

---

[19] Justices Kennedy, Sotomayor, and Kagan also found "additional support for [the majority's] conclusion in well-established presumptions about the nature of pre-emption"—that is, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption."  *CTS Corp.*, 134 S. Ct. at 2188 (Kennedy, J., concurring) (quotations omitted).
  Because this rationale is unnecessary to resolve the instant case, we do not consider it here.

legislative purpose of FIRREA supports the conclusion that the Extender Statute applies to statutes of repose." *NCUA*, 727 F.3d at 1264.

*     *     *

In light of the foregoing, we conclude *CTS*, which dealt with a fundamentally different statute, does not change our original conclusion that the Extender Statute's universal time frame for NCUA actions unambiguously displaces all pre-existing time periods, including Section 13's three-year statute of repose.  Because of this conclusion, we need not consider whether to apply the rule of "construing ambiguous statutes of limitations in Government action in the Government's favor."  *O'Gilvie v. United States*, 519 U.S. 79, 92 (1996).  Although "[w]e see no reason why this rule would not apply to Securities Act claims by the NCUA," and we note that Appellants come nowhere close to showing their own strained interpretation of the Extender Statute is unambiguous, the rule is "not needed here."  *NCUA*, 727 F.3d at 1267 n.21.

## III. CONCLUSION

We conclude *CTS Corp.* does not alter our original conclusion that NCUA's federal securities claims were timely under the Extender Statute.[20]  We reissue our original opinion along with the foregoing opinion on remand.

---

[20] Given our conclusion that *CTS Corp.* does not alter our original conclusion, we need not reconsider Appellants' arguments concerning repeal by implication.  *See NCUA*, 727 F.3d at 1266-67.

FILED
United States Court of Appeals
Tenth Circuit

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENCH CIRCUIT**

-------------------------------------------------

**August 27, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as
liquidating agent of U.S. Central Federal
Credit Union and of Western Corporate
Federal Credit Union,

　　　　　Plaintiff - Appellee,

v.

NOMURA HOME EQUITY LOAN,
INC.; WACHOVIA CAPITAL
MARKETS, LLC, n/k/a Wells Fargo
Securities, LLC; WACHOVIA
MORTGAGE LOAN AND TRUST,
LLC; NOVASTAR MORTGAGE
FUNDING CORP.; FINANCIAL ASSET
SECURITIES CORP.; RBS
ACCEPTANCE, INC., f/k/a Greenwich
Capital Acceptance, Inc.; RBS
SECURITIES, INC., f/k/a Greenwich
Capital Markets, Inc.,

　　　　　Defendants - Appellants,

　　　and

FREMONT MORTGAGE SECURITIES
CORP.; INDYMAC MBS, INC.; LARES
ASSET SECURITIZATION, INC.;
RESIDENTIAL FUNDING
MORTGAGE SECURITIES II, INC.,

　　　　　Defendants.

-------------------------------

Nos. 12-3295 and 12-3298

SECURITIES INDUSTRY AND
FINANCIAL MARKETS
ASSOCIATION,

     Amicus Curiae.

_____

**APPEALS FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. Nos. 2:11-CV-02340-JWL-JPO and 2:11-CV-02649-JWL-JPO)**
_____

Barry Levenstam, Jenner & Block, Chicago, Illinois (Barbara S. Steiner, Matthew J. Thomas, and Casey T. Grabenstein, Jenner & Block, Chicago, Illinois; W. Perry Brandt, Bryan Cave LLP, Kansas City, Missouri; Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, LLP, Topeka, Kansas; Jeffrey J. Kalinowski and Richard H. Kuhlman, Bryan Cave LLP, St. Louis, Missouri; William F. Alderman, Orrick, Herrington & Sutcliffe LLP, San Francisco, California; Timothy B. Mustaine, Foulston Siefkin LLP, Wichita, Kansas; Michael Thompson and Faiza Bergquist, Husch Blackwell LLP, Kansas City, Missouri; and R. Alexander Pilmer, David I. Horowitz, and Tammy A. Tsoumas, Kirkland & Ellis LLP, Los Angeles, California, with him on the briefs), appearing for Appellants.

David C. Frederick, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, D.C. (George Zelcs, Korein Tillery, Chicago, Illinois; Michael J. McKenna, General Counsel, and John K. Ianno, Associate General Counsel, National Credit Union Administration, Alexandria, Virginia; Wan J. Kim and Gregory G. Rapawy, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, D.C., with him on the brief), appearing for Appellee.

Ira D. Hammerman and Kevin Carroll, Securities Industry and Financial Markets Association, Washington, D.C., and Michael J. Dell and Aaron M. Frankel, Kramer Levin Naftalis & Frankel LLP, New York, New York, filed an amicus brief for Securities Industry and Financial Markets Association.

_____

Before **KELLY, McKAY,** and **MATHESON,** Circuit Judges.

_____

**MATHESON**, Circuit Judge.

---------------------------------------------

- 2 -

The National Credit Union Administration ("NCUA") placed two federally chartered corporate credit unions, U.S. Central Federal Credit Union ("U.S. Central") and Western Corporate Federal Credit Union ("WesCorp"), into conservatorship.  As liquidating agent, NCUA sued 11 defendants on behalf of U.S. Central, alleging federal and state securities violations.[1]  In a separate case, NCUA sued one defendant on behalf of U.S. Central and WesCorp, alleging similar federal and state securities violations.[2] The cases were consolidated in the United States District Court for the District of Kansas. We refer to all defendants in these actions collectively as "Defendants."

Defendants moved for dismissal, arguing that NCUA's claims were time-barred. The district court denied the motion, concluding that the so-called Extender Statute applied to NCUA's claims.  *See* 12 U.S.C. § 1787(b)(14).  Defendants successfully

---

[1] The 11 defendants named were Nomura Home Equity Loan, Inc.; RBS Securities, Inc.; Greenwich Capital Acceptance, Inc.; Financial Asset Securities Corp.; Fremont Mortgage Securities Corp.; Residential Funding Mortgage Securities II, Inc. ("Residential"); IndyMac MBS, Inc.; NovaStar Mortgage Funding Corp.; Lares Asset Securitization, Inc. ("Lares"); Saxon Asset Securities Co. ("Saxon"); and Wachovia Mortgage Loan Trust, LLC.

Defendant Saxon was voluntarily dismissed from the case.  Defendant Residential declared bankruptcy, making all proceedings against it subject to a bankruptcy stay. Defendant Lares failed to respond to the complaint.  [*Id.*]  The remaining defendants filed this appeal jointly.

[2] The defendant in the second case is Wachovia Capital Markets, LLC ("Wachovia Capital").  Wachovia Capital is a separate entity from Wachovia Mortgage Loan Trust, LLC, one of the 11 defendants in the first case.

- 3 -

moved for an interlocutory appeal for this court to determine whether the Extender Statute applies to NCUA's claims.

Exercising jurisdiction under 28 U.S.C. § 1292(b), we affirm.

## I.  BACKGROUND

We begin by describing several statutes relevant to this litigation.  We then summarize the factual and procedural history of the case before turning to a discussion of the issues.

### A.  *Securities Laws and the Extender Statute*

This case involves residential mortgage-backed securities ("RMBS").  RMBS are created through securitization by pooling residential mortgage loans and offering prospective investors the opportunity to invest in a particular loan pool through purchase of RMBS certificates granting ownership of a slice of the loan pool.  Investors can buy, sell, or hold these RMBS certificates.  When homebuyers pay back their loans, investors receive a positive return through payment of dividends and the increased value of the RMBS certificates.  *See In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 479 (S.D.N.Y. 2011) (describing mortgage securitization process).  Conversely, investors lose money when homebuyers fail to repay their mortgage loans.

Several steps occur before an RMBS certificate can be offered to an investor.

First, the mortgages are separated into "tranches," or classes, based on the estimated risk of default.

- 4 -

Second, a ratings agency assigns a credit rating to each tranche before it is sold. This step signals to investors the risk associated with a given security. Broadly speaking, the ratings agency determines the credit risk of a loan pool based on information about each loan in a given tranche, each borrower's creditworthiness, and the proposed capital structure of the loans.

Third, RMBS sellers must file registration statements with the Securities and Exchange Commission ("SEC"), along with a prospectus and other offering documents, which include disclosures about the RMBS being offered. Federal and state securities laws require RMBS sellers to provide investors with truthful and accurate information about the risks involved. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010). Sellers are liable when offering documents include false and misleading statements.

After the foregoing steps, the RMBS are sold to investors in the form of certificates.

1. **Federal securities laws**

Sections 11 and 12(a)(2) of the Securities Act of 1933 impose liability on certain participants in a registered securities offering that involves material misstatements or

omissions.  Section 11 applies to registration statements, and Section 12(a)(2) applies to prospectus materials and oral communications.[3]

For private litigants bringing a claim under Sections 11 or 12(a)(2), two deadlines must be satisfied.  Both appear in Section 13 of the Securities Act (codified as 15 U.S.C. § 77m),[4] under the heading "Limitation of actions."  First, a claim must be brought within one year from the date the violation is discovered or should have been discovered through the exercise of reasonable diligence.  Second, a claim is subject to a three-year limit, which provides that "[i]n no event" shall a claim under Section 11 be filed "more than three years after the security was bona fide offered to the public," and no "more than three years after the sale" in the case of a Section 12(a)(2) claim.  *Id.* at § 77m.

2.  **State securities laws**

The Kansas Uniform Securities Act makes a securities seller liable to a purchaser if the seller sells a security "by means of an untrue statement of a material fact or an omission."  K.S.A. § 17-12a509(b).  Kansas also sets two deadlines on state securities claims:  a two-year limitations period from the date the claim accrues and a five-year deadline from the date of the security's issuance or sale.  *Id.* § 17-12a509(j).

The California Corporate Securities Law of 1968 similarly makes a securities seller "liable to the person who purchases a security," Cal. Corp. Code § 25501, when the

---

[3] These provisions are codified at 15 U.S.C. §§ 77k, 77*l*(a)(1), and 77*l*(a)(2).  We refer to the claims under these provisions as "Section 11" and "Section 12(a)(2)" claims.

[4] We refer to this time-limit provision as "Section 13."

security has been sold or offered "by means of any written or oral communication which includes an untrue statement of a material fact" or is "misleading," *id.* § 25401. California's deadlines for securities claims are similar to those in Kansas:  two years from a plaintiff's discovery "of the facts constituting the violation," or five years from "the act or transaction constituting the violation."  *Id.* § 25506(b).

3.  **Time limits specific to NCUA: the Extender Statute**

The Federal Credit Union Act ("FCUA"), enacted in 1934, governs the regulation of federally chartered credit unions.  It established NCUA as an independent agency charged with regulating federally chartered credit unions and set the terms of federal insurance coverage for credit union accounts.

If NCUA finds that a credit union is insolvent, or in some circumstances if it is undercapitalized, FCUA directs NCUA to place the credit union in conservatorship or liquidation and appoint itself as conservator or liquidating agent.  12 U.S.C. §§ 1787(a)(1)(A), (a)(3)(A).  As conservator or liquidating agent, the Board steps into the shoes of the credit union and succeeds to "all rights, titles, powers, and privileges of the credit union."  *Id.* § 1787(b)(2)(A)(i).

In the wake of the savings and loan crisis of the 1980s, Congress passed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). FIRREA's purpose is to strengthen government regulation of federally chartered or insured financial organizations.  *See United States v. Winstar Corp.*, 518 U.S. 839, 844, 856 (1996).

- 7 -

FIRREA contains provisions often referred to as "extender statutes," which extend the time period for a government regulator to bring "any action" on behalf of a failed financial organization.  FIRREA has two such provisions with identical language.  One applies to NCUA, 12 U.S.C. § 1787(b)(14), and the other to the Federal Deposit Insurance Corporation ("FDIC"), NCUA's counterpart that regulates banks, *id.* § 1821(d)(14).  *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994) (describing the FDIC extender statute).[5]

The NCUA Extender Statute is titled "Statute of limitations for actions brought by conservator or liquidating agent."  12 U.S.C. § 1787(b)(14).  It reads:

> (A) In general
> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Board[6] as conservator or liquidating agent shall be—
>> (i) in the case of any contract claim, the longer of—
>>> (I) the 6-year period beginning on the date the claim accrues; or
>>> (II) the period applicable under State law; and
>> (ii) in the case of any tort claim, the longer of—
>>> (I) the 3-year period beginning on the date the claim accrues; or
>>> (II) the period applicable under State law.

---

[5] We discuss multiple extender statutes in this opinion, referring to each according to the agency to which it applies, e.g., "FDIC extender statute."  We refer to the extender statute that applies to the NCUA as the "NCUA Extender Statute" or simply the "Extender Statute."

[6] Here, "the Board" refers to the NCUA Board.  12 U.S.C. § 1752(4).

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Board as conservator or liquidating agent; or

(ii) the date on which the cause of action accrues.

Before FIRREA, Securities Act claims brought by the federal government were subject to the limitations provision of 28 U.S.C. § 2415 ("Section 2415"). *See, e.g.*, *FDIC v. Bachman*, 894 F.2d 1233, 1237 (10th Cir. 1990). Section 2415 is the default federal statute of limitations for all actions brought by the federal government when no other statute of limitations applies. *Id.* It reads, in relevant part:

§ 2415. Time for commencing actions brought by the United States

(a) . . . [E]xcept as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . .

(b) . . . [E]xcept as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues . . . .

Congress modeled the two FIRREA extender statutes after Section 2415. Early drafts of FIRREA legislation expressly incorporated "the [limitations] period provided for in section[] 2415." S. 774, 101st Cong. § 212 (as passed by Senate, Apr. 19, 1989) (early version of 12 U.S.C. § 1821(d)(14)), *available at* 1989 WL 1178231, at *44. Later

- 9 -

drafts of FIRREA featured separate limitations provisions, which were eventually enacted in their current form, and we refer to them as the extender statutes.

In the FIRREA extender statutes, Congress maintained the basic structure of Section 2415, with a three-year limitations period for tort claims and a six-year period for contract claims. But Congress omitted some portions of Section 2415 from the FIRREA extender statutes. In particular, the phrase "except as otherwise provided by Congress," which appears in Section 2415, does not appear in the extender statutes. *Compare* 12 U.S.C. §§ 1787(b)(14), 1821(d)(14), *with* 28 U.S.C. § 2415(a)-(b); *see also FDIC v. Thayer Ins. Agency, Inc.*, 780 F.Supp. 745, 748 (D. Kan. 1991) (recognizing the connection between Section 2415 and the FIRREA extender statutes and describing the latter as "an amended version of the limitations period found in 28 U.S.C. § 2415[].").

In addition to FIRREA's two extender statutes, several other extender statutes have been enacted. In 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), which contained an extender statute for any action brought by the Federal Housing Finance Administration ("FHFA") on behalf of a failed government-sponsored entity, such as Fannie Mae or Freddie Mac. *See* 12 U.S.C. § 4617(b)(12).

Another extender statute appears in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). 42 U.S.C. § 9658. This limitations provision, often referred to as "CERCLA § 309," establishes a federally mandated commencement date for state-law limitations periods on certain claims and provides a minimum time frame for plaintiffs to bring claims regardless of state law.

- 10 -

B.  *Factual History* [7]

1.  **Case No. 12-3295: RMBS purchased by U.S. Central**

The first of the two consolidated cases in this appeal involves 11 defendants, 29

RMBS certificates, and one of the two credit unions, U.S. Central.  On behalf of U.S.

Central Credit , NCUA alleged the defendants violated Sections 11 and 12(a)(2) of the

Securities Act of 1933, 15 U.S.C. §§ 77k, 77*l*(a)(2).  NCUA also alleged that one

defendant violated the Kansas Uniform Securities Act, K.S.A. § 17-12a509.

U.S. Central was the largest federally chartered corporate credit union in the

country before it failed.  In 2006 and 2007, U.S. Central invested in RMBS.  It purchased

29 RMBS certificates issued by 10 of the defendants and underwritten and sold by

Defendant RBS Securities Inc.  When U.S. Central made these purchases, nearly all

certificates were assigned the highest possible investment rating, indicating they were

low-risk investments.  But over the next four years, most of the certificates performed so

poorly that their credit ratings were "downgraded to well below investment grade."

Appx. at 305.  In other words, the certificates were reclassified to a credit rating

commonly referred to as "junk" grade.  *See Cody v. SEC*, 693 F.3d 251, 255 (1st Cir.

2012).

---

[7] We recite the facts in this case as we must view them:  "[A]s with any motion to dismiss for failure to plead a claim on which relief can be granted, [courts must] accept all factual allegations in the complaint as true."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

- 11 -

2. **Case No. 12-3298: RMBS purchased by U.S. Central and WesCorp**

The second of the two consolidated cases involves one defendant, five RMBS

certificates, and two credit unions, U.S. Central and WesCorp.  On behalf of the credit

unions, NCUA alleged violations of Sections 11 and 12(a)(2) of the Securities Act of

1933, 15 U.S.C. §§ 77k, 77*l*(a)(2), the California Corporate Securities Law of 1968, Cal.

Corp. Code §§ 25401, 25501, and the Kansas Uniform Securities Act, K.S.A. § 17-

12a509.

The credit unions purchased these RMBS certificates in 2006.  NCUA alleged that

U.S. Central and WesCorp relied on misleading statements in the offering documents that

the five RMBS certificates were "extremely safe."  Aplee. Br. at 8.  As with the first case,

the RMBS were highly rated at the time of purchase but experienced a "surge in borrower

delinquencies and defaults," resulting in significant losses and a "collapse[]" of their

credit ratings.   Appx. at 375-76.

3. **Both cases**

According to NCUA, by "May 2011, nearly half (45.73%) of the mortgage

collateral across all of the [RMBS] . . . was in delinquency, bankruptcy, foreclosure, or

was . . . [owned by a bank or lending institution] after a failed sale at a foreclosure

auction."  *Id.* at 303.  This resulted in staggering losses for the credit unions.  Together,

the credit unions paid $1.74 billion for the RMBS involved in both cases, and losses from

these failed investments contributed to the demise of both organizations.  NCUA placed

- 12 -

both credit unions in conservatorship in March 2009, then in involuntary liquidation in October 2010.

After taking over the credit unions, NCUA began investigating these RMBS.  It reviewed the offering documents, which had represented that "[t]he mortgage loans [had] been originated generally in accordance with" industry underwriting standards, Appx. at 307, and that the mortgages in the RMBS pool had "zero or near zero delinquencies and defaults," *id.* at 302.  NCUA concluded that at the time the RMBS certificates were sold, they were "significantly riskier than represented in the [o]ffering [d]ocuments" and that "a material percentage of the borrowers whose mortgages comprised the [RMBS] were all but certain to become delinquent or [in] default shortly after origination."  *Id.* at 301-02 (quotations omitted).

NCUA further concluded that the offering documents contained materially false and misleading statements about the credit worthiness of the mortgage borrowers and the underwriting practices used by originators of the mortgages.  NCUA claims these materially false and misleading statements concealed underwriters' "shoddy" practices and "systematic disregard[ ]" of their own guidelines and industry standards.  *Id.* at 305, 308-09 & n.1.

## C.  *Procedural History*

In June 2011, NCUA filed a complaint in the United States District Court for the District of Kansas on behalf of U.S. Central, naming 11 defendants.  In November 2011, NCUA filed a separate complaint in the same court on behalf of both U.S. Central and

- 13 -

WesCorp against a single defendant, Wachovia Capital Markets, LLC, alleging similar violations of federal and state securities laws concerning the five RMBS certificates purchased by both credit unions.

The two cases were consolidated in the district court in June 2012. Most of the defendants filed a joint motion to dismiss both cases pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting multiple grounds for dismissal, including timeliness.

In July 2012, the district court granted the motion to dismiss as to some claims unrelated to this appeal and denied the motion as to other claims. The district court certified certain issues for interlocutory appeal in November 2012, and we granted a petition for interlocutory appeal over NCUA's objection. The scope of this interlocutory appeal is limited to the meaning of the Extender Statute.

## II. **DISCUSSION**

Defendants make two arguments that NCUA's claims are untimely. First, they argue that the Extender Statute does not apply to repose periods and that Section 13's three-year period is a repose period. Under this theory, the Securities Act claims would be untimely because NCUA brought them more than three years after the RMBS were offered and purchased.[8] Second, Defendants argue that the Extender Statute covers only

---

[8] Although the Kansas and California securities laws contain statutes of repose—five years in both states—Defendants do not argue that these state repose periods bar NCUA's state law claims.

state common law claims.  Under this theory, the Extender Statute would not apply to any

of NCUA's claims—all of which are statutory.[9]

We consider these questions of statutory interpretation de novo.  *United States v.*

*Manning*, 526 F.3d 611, 614 (10th Cir. 2008).

### A.  *Does the Extender Statute Apply to Section 13's Three-Year Period?*

As discussed above, Section 13 sets forth two separate time limits for federal

Securities Act claims:  (1) a one-year limit, which begins from the date the claim is

discovered or reasonably should have been discovered; and (2) a three-year limit from the

date the security is offered or sold, depending on whether the claim falls under Section 11

or Section 12(a)(2).  15 U.S.C. § 77m.  Both time limits appear under the heading

"Limitation of actions."  *Id.*

---

[9] If Defendants were to prevail on this second argument, all claims would likely be untimely—either by virtue of the one-year limitations period in Section 13 and in both state securities laws or by virtue of Section 13's three-year period.

NCUA's claims must meet all applicable deadlines under the federal and state laws.  As to the Securities Act, only the three-year deadline is relevant to this appeal.  Even if NCUA prevails on this appeal, the one-year deadline could still bar any of the claims if the district court finds that the credit unions discovered or reasonably should have discovered the alleged violations more than a year before NCUA's appointment as receiver.  This would mean that "the claims here were not live when [NCUA] was appointed receiver" and would therefore be untimely now.  *FDIC v. Countrywide Fin. Corp.*, No. 2:12-CV-4354 MRP (MANx), 2012 WL 5900973, at *2 (C.D. Cal. Nov. 21, 2012).

As to state law deadlines, only the one-year statute of limitations period is relevant to this appeal because, as we note in the footnote above, Defendants do not attempt to argue that the five-year state repose periods bar NCUA's state law claims.

- 15 -

Several matters are not contested.  First, the parties agree the RMBS certificates were offered and sold more than three years before NCUA filed its claims.  The Securities Act claims are therefore untimely under Section 13's three-year period unless the Extender Statute applies.  The parties and the district court also agree, as do we, that this three-year period is not an ordinary statute of limitations, but rather a statute of repose.[10]

Defendants argue that statutes of limitations and repose are fundamentally distinct categories and that the Extender Statute does not cover repose periods.

We first explain why Section 13's three-year period is a repose period.  We then turn to the Extender Statute's language to determine whether it covers the repose period in this case.

### 1.  Section 13's three-year period is a statute of repose

A statute of repose is similar to an ordinary statute of limitations in that both types of provisions "function as filing deadlines."  *Iacono v. Office of Pers. Mgmt.*, 974 F.2d 1326, 1328 (Fed. Cir. 1992).  But unlike an ordinary statute of limitations, which begins running when an injury is discovered or reasonably should have been discovered—i.e., when the claim accrues—"[a] statute of repose is a fixed, statutory cutoff date, usually independent of any variable, such as claimant's awareness of a violation."  *Munoz v. Ashcroft*, 339 F.3d 950, 957 (9th Cir. 2003); *see also Alexander v. Beech Aircraft Corp.*,

---

[10] Everyone also agrees that Section 13's one-year period is an ordinary statute of limitations.  Only the three-year limit is at issue in this appeal.

952 F.2d 1215, 1218, n.2 (10th Cir. 1991) (In a statute of repose, "[t]he bar . . . is tied to an independent event.").[11]

A statute of repose may extinguish a plaintiff's cause of action "whether or not the plaintiff should have discovered within that period" that there was a violation or an injury. *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 733 (7th Cir. 2010) (discussing products liability repose period). An ordinary limitations period is "a procedural device" that may be tolled for equitable reasons. *Amoco Prod. Co. v. Newton Sheep Co.*, 85 F.3d 1464, 1472 (10th Cir. 1996) (quotations omitted); *see also FHFA v. UBS Am. Inc.*, 712 F.3d 136, 140 (2d Cir. 2013). In contrast, a repose period "creates a substantive right in those protected to be free from liability after a legislatively-determined period of time," and may not be equitably tolled. *Amoco Prod.*, 85 F.3d at 1472 (quotations omitted).[12]

---

[11] Another helpful explanation is that both statutes of limitation and statutes of repose "prescribe the time period within which a plaintiff may commence an action," but

> [t]he distinguishing feature between the two is the time at which the respective periods commence. . . . Unlike an ordinary statute of limitations, which begins running upon accrual of the claim, the period specified in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted.

54 C.J.S. *Limitations of Actions* § 7 (2013).

[12] Although statutes of repose are not subject to *equitable* tolling, they are "subject . . . to legislatively created exceptions." *Police & Fire Retirement Sys. v. IndyMac MBS, Inc.*, 2013 WL 3214588, --- F.3d ---, *4 (2d Cir. 2013) (quotations omitted). In a few cases, courts have referred to such legislative exceptions as "legal tolling." *See, e.g.*,

Continued. . .

- 17 -

Section 13 does not use the word "repose."  Both the one-year and three-year time limits in Section 13 appear under the title "Limitation of actions."  *See* 15 U.S.C. § 77m. Nevertheless, the parties and the district court agree, as do we, that Section 13's one-year limit is an ordinary statute of limitations and the three-year limit is a statute of repose.  As we discuss later, "[b]oth types of statutes are often referred to as statutes of limitations." *Alexander*, 952 F.2d at 1218 n.2.

Section 13's one-year limit commences when the violation is discovered or should have been discovered through the exercise of reasonable diligence.  *See* 15 U.S.C. § 77m. It is therefore an ordinary limitations period.  By contrast, the three-year limit provides that "[i]n no event shall any . . . action be brought" more than three years after a security is sold or offered to the public.  *Id.*  This language sets a fixed point of commencement from the date of a defendant's wrongful action, not the date of injury or discovery.  The three-year period is therefore a repose period.  *See Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420, 1434 (10th Cir. 1991), *vacated on other grounds by Dennier v. Trippet*, 503 U.S. 978 (1992).

We turn now to the Extender Statute's language and address the question at issue in this appeal:  whether the Extender Statute supplants Section 13's three-year repose period.

---

*Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1419 n.6 (2012); *Joseph v. Wiles*, 223 F.3d 1155, 1166-67 (10th Cir. 2000).

2.  **The meaning of the Extender Statute**

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  If it does, "our inquiry must cease," *id.*, and "the plain meaning of the statute controls," *United States v. Quarrell*, 310 F.3d 664, 669 (10th Cir. 2002); *see also Wright v. Fed. Bureau of Prisons*, 451 F.3d 1231, 1233 (10th Cir. 2006) ("[T]he court 'must give effect to the unambiguously expressed intent of Congress.'" (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000))).

If, on the other hand, the language is ambiguous, then "we must turn to other sources to find its meaning."  *S. Utah Wilderness Alliance v. Office of Surface Mining Reclamation & Enforcement*, 620 F.3d 1227, 1237-38 (10th Cir. 2010); *see also Robinson*, 519 U.S. at 345-46 ("resolv[ing] . . . ambiguity" in a statute by looking to its "broader context" and "primary purpose"); *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1143 (10th Cir. 2005) (if a statute is ambiguous, "we must dig further" to determine its meaning); *Quarrell*, 310 F.3d at 669 ("[I]f an ambiguity is found, a court may seek guidance from . . . the purpose behind the statute." (quotations omitted)).

A statute is ambiguous if it is reasonably "susceptible to more than one interpretation," *Wright*, 451 F.3d at 1235, or "'capable of being understood in two or more possible senses or ways,'" *Chickasaw Nation v. United States*, 534 U.S. 84, 90 (2001) (quoting Webster's Ninth New Collegiate Dictionary 77 (1985)); *see also*

- 19 -

*Robinson*, 519 U.S. at 345; *Quarrell*, 310 F.3d at 669 ("[A] statute is ambiguous when it is 'capable of being understood by reasonably well-informed persons in two or more different senses.'" (quoting *In re Geneva Steel Co.*, 281 F.3d 1173, 1178 (10th Cir. 2002))).

We first examine the language of the Extender Statute to determine whether it has a plain and unambiguous meaning as to statutes of repose. We find the plain meaning of the text best supports the conclusion that the Extender Statute supplants all other limitations frameworks, including both the one-year and three-year provisions in Section 13. We then consider Defendants' arguments regarding the meaning of "statute of limitations" in the Extender Statute and recognize that the term is potentially ambiguous. After consulting several sources to resolve the ambiguity, we confirm our initial finding that the Extender Statute applies to periods of repose like Section 13's three-year period.

a.   *Plain meaning analysis*

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341; *Sierra Club*, 421 F.3d at 1143; *S. Utah Wilderness Alliance*, 620 F.3d at 1238. As applied to this case, we (i) examine the Extender Statute's language, (ii) review various sources to identify the ordinary meaning of the term "statute of limitations" at the time Congress enacted the Extender Statute, (iii) consider the surrounding language in the statute (specific context),

- 20 -

and (iv) look to how the term is used in surrounding provisions of FIRREA (broader context).

### (i) The Extender Statute's language

The Extender Statute extends "*the* applicable statute of limitations" for "*any* action brought by" NCUA on behalf of a failed credit union.  12 U.S.C. § 1787(b)(14)(A) (emphasis added).  Application of the Extender Statute is mandatory.  *Id.* ("the applicable statute of limitations . . . *shall be* . . ." (emphasis added)).  *See Mallard v. United States Dist. Ct.*, 490 U.S. 296, 302 (1989) (use of "shall" indicates a statutory instruction is "compulsory" and "mandatory").

"By using these words, Congress precluded the possibility that some other limitations period might apply to claims brought by [NCUA] as conservator [or receiver]."  *UBS Am. Inc.*, 712 F.3d at 142 (discussing the FHFA extender statute, which is identical to the NCUA Extender Statute).  Thus, the plain meaning of the statute indicates that it applies to NCUA's Securities Act claim and that it supplants all other time limits, including Section 13's repose period.  We therefore agree with the Second Circuit that this is the natural and correct reading of this language.  *Id.* at 141-42.

Defendants argue that the term "statute of limitations" in the Extender Statute does not include statutes of repose.  It follows, they say, that the Extender Statute replaces only Section 13's one-year period and not its three-year period.  But Defendants misread the Extender Statute.

The term "statute of limitations" is phrased in the singular—it follows the word "*the*" and uses the word "*statute*," not "statutes."  12 U.S.C. § 1787(b)(14)(A) (emphasis added).  This term refers to the time limits in the Extender Statute itself—subparagraphs (A) and (B)—not the time periods in other statutes that the Extender Statute replaces, such as those in Section 13.  And it applies to "*any action* brought by [NCUA]."  *Id.*

Although Defendants contend that their reading of the Extender Statute is plain and unambiguous, it is the opposite—at best a strained reading that may be plausible only if the term "statute of limitations" in the Extender Statute can be (1) understood narrowly and (2) somehow refers to time restrictions contained in statutes other than the Extender Statute.

Rather than stop here and conclude, as the Second Circuit did in *UBS*, that the Extender Statute is plain and unambiguous in NCUA's favor, we assume for the sake of discussion that the Defendants' reading based on the text alone is at least plausible.  We therefore examine the term "statute of limitations" more closely.  The following contextual analysis further demonstrates the weakness of the Defendants' interpretation of the Extender Statute—and the correctness of the district court's conclusion that the Extender Statute governs NCUA's Securities Act claims and supplants other limitations frameworks.

(ii) Ordinary meaning of "statute of limitations"

When interpreting a statute, we must "giv[e] all undefined terms their ordinary meaning."  *UBS Am.*, 712 F.3d at 141; *Schindler Elevator Corp. v. United States ex rel.*

*Kirk*, 131 S. Ct. 1885, 1891 (2011).  We first assess the way the term is used.  Because words do not have "intrinsic meanings. . . . [i]t is only through custom, usage, and convention that language acquires established meanings."  Norman J. Singer & J.D. Shambie Singer, 2A *Sutherland Statutory Construction* § 45:2, at 14-15 (7th ed. 2007).

"Importantly, the proper inquiry focuses on the ordinary meaning of the [term] at the time Congress enacted it."  *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 184 (2004).  "[T]he terms 'statute of limitations' and 'statute of repose' have seen considerable development in their usage and meaning."  *Waldburger v. CTS Corp.*, 2013 WL 3455775, at *6, -- F.3d -- (4th Cir. 2013).  "[A] historical analysis reveals that both scholars and courts have often used the terms interchangeably."  *Id.* (citing *McDonald v. Sun Oil. Co.*, 548 F.3d 774, 781 (9th Cir. 2008) ("[A]lthough some cases recognized the differences between statutes of limitation and repose [in 1986], a number of cases confused the terms or used them interchangeably . . . [and] considerable uncertainty about the distinction existed."); *id.* at 781 nn.3-4 (collecting historical examples of inconsistent and overlapping use of the two terms)).

A review of sources published before and shortly after Congress enacted the Extender Statute indicates that "statute of limitations" did not have a consistent, clearly distinct meaning in 1989.  *See UBS Am.*, 712 F.3d at 142-43 & n.3; *Waldburger*, 2013 WL 3455775, at *7, -- F.3d at --.  Courts often begin an ordinary meaning analysis by consulting contemporary dictionary definitions.  *See, e.g.*, *Permanent Mission of India to the United Nations v. City of New York*, 127 S. Ct. 2352, 2356 (2007) (consulting the

- 23 -

fourth edition of Black's Law Dictionary to interpret a federal statute adopted in 1976);

*Limtiaco v. Comacho*, 127 S. Ct. 1413, 1418 (2007) (consulting the fourth edition of

Black's Law Dictionary published in 1951 to interpret a Guam statute enacted in 1950);

*Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 125-26 (2003) (consulting

law dictionaries published in 1856 and 1859 to interpret a statute adopted in 1863).

The fifth edition of Black's Law Dictionary was published in 1979 and was

current when FIRREA was enacted.  It did not provide a definition for statutes of repose.

Instead, the entry for "Repose statutes" redirected the reader to the entry for "Limitation

(Statute of limitation)."  Black's Law Dictionary 1169 (5th ed. 1979).  The entry for

"Statute of limitations" in the same edition referred twice to statutes of repose.  First, it

stated that "[s]tatutes of limitation are statutes of repose, and are such legislative

enactments as prescribe the periods within which actions may be brought upon certain

claims or within which certain rights may be enforced."  *Id.* at 835.  Second, the final

sentence of the entry stated:  "Also sometimes referred to as 'statutes of repose.'"  *Id.*[13]

---

[13] The next edition of Black's Law Dictionary, published in 1994, provided a
separate entry for "Statute of repose" that addressed the distinctions between repose and
limitations periods.  Black's Law Dictionary 1411 (6th ed. 1994).  Nevertheless, the entry
for "Statute of limitations" begins with a broad definition:  "Statutes . . . setting
maximum time periods during which certain actions can be brought or rights enforced."
*Id.* at 927.  Later in the same entry is a note with the subheading "Statute of repose
compared."  That note begins with the sentence, "While statutes of limitation are
sometimes called 'statutes of repose' . . . " and proceeds to explain the distinctions we
already have discussed.  *Id.* at 927.

Beyond dictionary definitions, the Supreme Court used the terms "statute of limitations" and "statute of repose" synonymously in cases published before the Extender Statute's enactment. *E.g.*, *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (referring to statutes of limitations generally as "statutes of repose"); *Guaranty Trust Co. v. United States*, 304 U.S. 126, 136 (1938) (referring to a statute of limitations:  "The statute of limitations is a statute of repose . . . .").

A 1991 treatise on limitations of actions described five definitions for statute of repose:

> (1) in the most general sense, statute of repose is synonymous with statute of limitations; (2) [it] is a general term that encompasses various statutes, including statutes of limitations . . . ; (3) it is merely one type of statute of limitations . . . ; (4) [it] is considered distinct from a statute of limitations because it begins to run at a time unrelated to the traditional cause of action, that is, from the date of the act of injury regardless when discovered; and (5) it is synonymous with the "useful safe life" provisions of products liability statutes.

Calvin W. Corman, 1 *Limitation of Actions* § 1.3.2.1, at 30-31 (1991).  Applying these definitions to the term "statute of limitations" in the Extender Statute, only the fourth definition supports Defendants' narrow reading, while the first, second, and third definitions support a broader reading and the fifth definition is irrelevant.

The foregoing discussion supports the broader meaning of "statute of limitations." But it also shows that, standing alone, the words "statute of limitations" may be ambiguous.[14]

 (iii) <u>Specific context:  surrounding language</u>

The Extender Statute set a new limitations framework that displaced pre-existing limitations frameworks for "any action" brought by NCUA.  12 U.S.C. § 1787(b)(14) ("[T]he applicable statute of limitations with regard to any action . . . shall be . . . ").  In defining the new limitations framework, the Extender Statute provides this instruction:

> (B) Determination of the date on which a claim accrues
> [T]he date on which the statute of limitation begins to run . . . shall be the later of—
> (i) the date of the appointment of [NCUA] as conservator or liquidating agent; <u>*or*</u>
> (ii) the date on which the cause of action accrues.

---

[14] Courts have noted the historically ambiguous and overlapping use of these terms.  *E.g.*, *FHFA v. UBS Am. Inc.*, 712 F.3d 136, 140, 142-43 & n.3 (2d Cir. 2013) ("[C]ourts . . . have long used the term 'statute of limitations' to refer also to statutes of repose." (referring, inter alia, to *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 (1976))); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 952 n.7 (9th Cir. 2005) ("[T]he distinction between statutes of limitations and statutes of repose is often blurred."); *Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1218, n.2 ("Although the statute is titled as a 'Statute of limitations,' we refer to it as a statute of repose. . . . Both types of statutes are often referred to as statutes of limitations."); *Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420, 1434 n.17 (10th Cir. 1991), *vacated on other grounds by Dennier v. Trippet*, 503 U.S. 978 (1992) ("Although the two concepts differ," the terms statute of limitations and statute of repose "have become interchangeable.").

*Id.* § 1787(b)(14)(B) (emphasis added).  The statute uses the word "accrues" two additional times in defining the length of the new limitations period.  *See id.* § 1787(b)(14)(A)(i)(I) & (ii)( I).

As the language quoted above shows, the Extender Statute's new limitations framework includes the concept of accrual.  As Defendants argue, accrual is generally associated with the narrow meaning of "statute of limitations."  But the Extender Statute also includes the concept of repose.  Subsection (B) provides that the limitations period begins to run either (i) on "the date of the appointment of [NCUA] as conservator or liquidating agent" or (ii) when "the cause of action accrues."  Option (i) invokes repose language.

Defendants argue that the Extender Statute's reference to accrual means that it may only apply if the time limit being displaced is also subject to accrual—that is, when the displaced time limit falls within the narrow meaning of "statute of limitations."  But this argument confuses what the Extender Statute *does*—sets an all-purpose time frame for NCUA to bring enforcement actions on behalf of failed credit unions—with what it *replaces*—the preexisting time frames to bring "any action."

The references to accrual appear in the portion of Extender Statute that defines its own new limitations framework—what it does.  The references do not expressly limit what time limits the statute replaces.  The mere fact that the new time period in the Extender Statute could be subject to accrual does not prevent it from displacing a time limit that is not, i.e., a repose period.

- 27 -

Thus, the statute is most reasonably interpreted to govern "any action" NCUA may bring—and to displace *all* "statutes of limitations" in the broad sense of the term, which encompasses both ordinary statutes of limitations and statutes of repose.

(iv)   Broader context:  Surrounding provisions of FIRREA

By itself, the ordinary meaning of the term "statute of limitations" is ambiguous. "Statutory construction, however, is a holistic endeavor.  A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988); *see also UBS Am.*, 712 F.3d at 141 ("[C]ourts are not to construe each phrase . . . in isolation." (quotations omitted)).  We therefore look to the surrounding provisions of FIRREA to see if this context makes the meaning clear.

FIRREA is codified in Title 12, Chapter 14 of the U.S. Code.  Section 1752 provides general definitions for the chapter, but "statute of limitations" is not among the terms defined.  Even when a statute does not explicitly define a particular term, we might gain understanding of the term from how it is used elsewhere in the statute.

Defendants define "statute of limitations" as a period that commences on the date a cause of action accrues.  And they argue that any time limit that is "triggered by an arbitrary event unrelated to the accrual of the cause of action" is plainly inconsistent with this narrow definition.  Aplt. Br. at 29-31 (quotations omitted).  If they are correct that the term has an unambiguous, narrow meaning in the Extender Statute, then we would expect to find the term used narrowly in other parts of the statute.  But this is not the case.

- 28 -

Section 1787 of FIRREA includes the Extender Statute.  This section, inter alia, defines NCUA's powers and duties as conservator or liquidating agent, governs the process of winding up a failed credit union (including claims against the credit union), and provides for payment of claims on insured deposits.  *See generally* 12 U.S.C. § 1787. Section 1787 refers to "statute of limitations" or "statute of limitation" in six provisions, including the Extender Statute.[15]  The word "repose" does not appear.  Two references to statutes of limitations in § 1787 could arguably meet Defendants' narrow definition. These two provisions provide for tolling of "any applicable statute of limitation" when an external claimant files a claim with NCUA against a failed credit union, s*ee* 12 U.S.C. §§ 1787(b)(5)(F)(i), (b)(8)(E).  As noted previously, the availability of tolling distinguishes ordinary statutes of limitations from statutes of repose.  These provisions are consistent with the broad definition of "statute of limitations" because the broad encompasses the narrow, but they do not foreclose the narrow definition.

---

[15] Besides the Extender Statute, the term "statute of limitation(s)" appears in the following provisions:  12 U.S.C. § 1787(b)(5)(F)(i) (tolls "any applicable statute of limitations" on external claims against a credit union when the claimant files a claim with NCUA); *id.* at § 1787(b)(6)(B) (sets a 60-day "[s]tatute of limitations" for federal court review or administrative appeal of external claims denied by NCUA); *id.* at § 1787(b)(8)(D) (sets 30-day "[s]tatute of limitations" for federal court review or administrative appeal of external claims denied by NCUA under expedited claims process); *id.* at § 1787(b)(8)(E) (allows tolling of "any applicable statute of limitations" on external claims against a credit union when claimant files a claim with NCUA under expedited claims process); *id.* at § 1787(d)(4) (sets a "[s]tatute of limitations" of "not later than 60 days" for filing a federal court challenge to NCUA's denial of claim for payment of an insured deposit).

Other § 1787 provisions, however, use the term in a way that is inconsistent with the Defendants' narrow definition.  Three subsections set deadlines for appealing NCUA's denial of a claim, without allowing for accrual or tolling—yet all are clearly labeled "statutes of limitations."  *See id.* §§ 1787(b)(6)(B), (b)(8)(D), (d)(4).  One of these deadlines, § 1787(d)(4), is "not later than 60 days after the date on which" NCUA's decision is issued.  *Id.*  Like the three-year repose period in Section 13, this 60-day period sets a fixed time limit and commences from the date of the challenged event—not the date of discovery or accrual, as is the case with ordinary statutes of limitations, such as Section 13's one-year period.

In short, Congress's use of "statute of limitations" throughout § 1787 does not support Defendants' argument that the term's meaning is unambiguously narrow.  To the contrary, some of the § 1787 references suggest a broader meaning that would encompass statutes of repose.

\*       \*       \*

In sum, we started by examining the Extender Statute's text.  We found that its time periods' application to "any action" indicates that the Extender Statute supplants any other time periods that otherwise would apply to NCUA claims.  We then focused on the term "statute of limitations" in the Extender Statute to determine whether Defendants' narrow view of the statute's coverage holds water.  We recognized that "statute of limitations" standing alone can be ambiguous, but our contextual analysis showed that

- 30 -

the term is used broadly in the Extender Statute to cover statutory time limits generally, including repose periods.

Although all signs point to the Extender Statute's application to Section 13's three-year period, we will again give Defendants the benefit of the doubt and assume there may be a modicum of ambiguity as to whether the Extender Statute covers statutes of repose.  But any such ambiguity is easily resolved, as the ensuing discussion shows.

3.  **Resolving ambiguity in the Extender Statute**

The preceding discussion goes a long way to resolving any ambiguity about the Extender Statute's coverage because the language and context strongly suggest the Extender Statute supplants any other time limits for any claim NCUA brings on behalf of a failed credit union.

To the extent any lingering ambiguity must be resolved, "we must turn to other sources to find its meaning."  *S. Utah Wilderness Alliance*, 620 F.3d at 1237-38; *see also Robinson*, 519 U.S. at 345; *Quarrell*, 310 F.3d at 669.  We examine "the purpose and scope" of FIRREA and the Extender Statute specifically.  *UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173, 1178 (10th Cir. 1999); *see also Robinson*, 519 U.S. at 346 (considering the "primary purpose of antiretaliation provisions" in Title VII in interpreting whether an ambiguous statutory reference to "employee" included former employees).  We then consider the use of the term "statute of limitations" in federal legislation generally and in case law.  We conclude by addressing Defendants' remaining arguments on this issue.

- 31 -

a.   *Statutory purpose*

"Examination of purpose is a staple of statutory interpretation that makes up the

daily fare of every appellate court in the country . . . ."  *McCreary Cnty v. ACLU*, 545 U.S.

844, 861 (2005).  "'Our task is to interpret the words of the statute in light of the purposes

Congress sought to serve.'"  *Wright*, 451 F.3d at 1234 (quoting *Hain v. Mullin*, 436 F.3d

1168, 1176 (10th Cir. 2006) (en banc)); *Quarrell*, 310 F.3d at 669 ("A court can . . .

resolve ambiguities by looking at the purpose behind the statute."); *In re Geneva Steel*

*Co.*, 281 F.3d at 1178 ("Ambiguous text can . . . be decoded by knowing the purpose

behind the statute"); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80

(2004) (looking to statutory purpose to interpret an ambiguous statute); *Reeves v. Ernst &*

*Young*, 494 U.S. 56, 73 ("Given this ambiguity, the [provision] must be interpreted in

accordance with its purpose.").

Congress enacted FIRREA in the wake of the widespread financial crisis caused

by failures of savings and loan associations in the late 1980s.  It did so to "prevent[] the

collapse of the industry, attack[] the root causes of the crisis, and restor[e] public

confidence."  *Winstar Corp.*, 518 U.S. at 844, 856.  The preamble to the bill described

FIRREA as "An Act to reform, recapitalize, and consolidate the Federal deposit

insurance system, to enhance the regulatory and enforcement powers of Federal financial

institutions regulatory agencies, and for other purposes."  FIRREA, Pub. L. No. 101-73,

103 Stat. 183.  FIRREA's stated purpose also included "[t]o strengthen the enforcement

powers of Federal regulators of depository institutions," *id.* § 101(9), and "[t]o strengthen

- 32 -

the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors," *id.* § 101(10).[16]  The legislation also was designed "to curtail investments and other activities of savings associations that pose unacceptable risks to" federally insured deposits.  H.R. Rep. No. 101-222, at 393 (1989) (Conf. Rep.), *reprinted in* 1989 U.S.C.C.A.N. 432.

FIRREA's sponsor said the extender provisions should "be construed to maximize potential recoveries . . . by preserving to the greatest extent permissible by law claims [filed by the Government] that would otherwise have been lost due to the expiration of hitherto applicable limitations period."  135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (statement of Senator Donald W. Riegle, Jr., then-Chairman of the Committee on Banking, Housing, and Urban Affairs and sponsor of FIRREA in the Senate, regarding the FDIC extender statute, which is identical to the NCUA Extender Statute).  "In interpreting a statute, we accord substantial weight to statements by its sponsors concerning purpose and scope."  *UMLIC-Nine-Corp.*, 168 F.3d at 1178; *see also Fed. Energy Admin. v. Algonquin SNG, Inc.*, 426 U.S. 548, 564 (1976).  We have previously relied on this statement and similar statements in the legislative record when interpreting the purpose and scope of the FIRREA extender statutes, as have other circuits.  *See*

---

[16] The Extender Statute was a relatively small part of FIRREA's large legislative scheme.  But regardless whether the statutory language at issue is the centerpiece of a legislation or a minor provision, "[i]t is a cardinal canon of statutory construction that statutes should be interpreted harmoniously with their dominant legislative purpose." *United States v. Gallenardo*, 579 F.3d 1076, 1085 (9th Cir. 2009).

- 33 -

*UMLIC-Nine Corp.*, 168 F.3d at 1178 (relying on the same statement by Sen. Riegle);

*SMS Fin., LLC v. ABCO Homes, Inc.*, 167 F.3d 235, 242 n.21 (5th Cir. 1999) (relying on

similar comments concerning the purpose of the extender statutes); *FDIC v. N.H. Ins.*

*Co.*, 953 F.2d 478, 486-87 & n.2 (9th Cir. 1991) (relying on the same statement by Sen.

Riegle).

Defendants counter that FIRREA's main purpose was to strengthen the FDIC.

They argue that the NCUA provisions were not the main focus of the legislation.  But

even if that is true, it does not change our analysis.  Congress enacted both extender

statutes simultaneously, using identical language.  It is reasonable to conclude that the

purpose and meaning Congress ascribed to one applies to the other.[17]

Defendants also invoke the legislative history of Section 13, suggesting that

Congress meant the three-year period to be absolute.  They cite to statements from a 1934

legislative debate that "no suit under any circumstances shall be brought after 3 years."

*See* 78 Cong. Rec. S8201 (daily ed. May 7, 1934) (statement of Sen. Barkley), *reprinted*

*in 1 Federal Securities Laws – Legislative History 1933-1982*, at 1011 (Fed. Bar Ass'n

1983).  But these references do not tell us anything about the purpose of the Extender

Statute, which was enacted more than 50 years after Section 13, or its effect on Section

---

[17] Defendants also note that the legislative history of the Extender Statute does not
explicitly reference "repose periods."  But this begs the question whether "statute of
limitations" was used in a broad sense that would include statutes of repose.  Defendants
have not cited, and we have not found, any guidance in the legislative history that
suggests statute of limitations should be construed in the narrow sense they propose.

13.  And as NCUA notes, the statements Defendants cite appear in a debate regarding whether the three-year period would be subject to a discovery rule, not whether later-enacted extender statutes would apply.  Moreover, in the surrounding portions of Section 13's legislative record, the three-year period is repeatedly referred to as a "statute of limitations," not a "statute of repose."  *See id* at 8197-8203.

In sum, the legislative purpose of FIRREA supports the conclusion that the Extender Statute applies to statutes of repose.

### b.  *Use of "statute of limitations" in federal legislation*

Our review of federal legislation generally suggests that when legislation "uses the term 'statutes of limitation,' it generally contemplates all limitation statutes, including statutes of repose."  *Wenke v. Gehl Co.*, 682 N.W.2d 405, 415 (Wis. 2004).[18]  Indeed, Congress has very rarely used the terms "statute of repose" or "repose period."  A district court recently found only "[a] single uncodified law using the term ['repose']" with respect to timeliness.  *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 900 F. Supp. 2d 1055, 1065 (C.D. Cal. 2012) (hereinafter "*In re Countrywide*"); *see also*

---

[18] Defendants disagree.  They point to "[t]he preeminent canon of statutory interpretation [that] requires us to presume that the legislature says in a statute what it means and means in a statute what it says there."  *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).  Relying on this canon, they argue that because Congress referred only to statutes of limitation, and not to statutes of repose, it meant to include the former and exclude the latter.  Apart from Defendants' continued misreading of the term "statute of limitations" in the Extender Statute as referring to time limits outside the Extender Statute, this argument is further flawed.  It simply assumes the narrow meaning of "statute of limitations" and sheds no light on whether Congress actually used the term narrowly or broadly.

- 35 -

*McDonald*, 548 F.3d at 784 ("[A]n electronic search of the text of the United States Code also fails to reveal a single instance of the phrase 'statute of repose.'").

In contrast, one court has noted,

> Congressional statutes continue to use the term 'statutes of limitations' to encompass statutes of repose . . . The United States Code is littered with statutory provisions entitled 'statute of limitations,' 'time limits,' 'time limitations' and 'limitations of actions,' that regulate both when plaintiffs can bring a claim after discovery of their rights and when plaintiffs are absolutely barred from bringing a claim.

*In re: Countrywide*, 900 F. Supp. 2d at 1063; *see also UBS Am.*, 712 F.3d at 143, n.4 (agreeing with *In re: Countrywide*).[19]

This indicates that the absence of the word "repose" in the Extender Statute is not, as Defendants argue, a "deliberate omission" meant to exclude repose periods from the statute's coverage. Aplt. Br. at 9.

c. *Use of "statute of limitations" in case law*

Our review of case law indicates that federal courts' use of the term "statute of limitations" in their decisions reinforces the broader meaning of the term. *See Stewart v.*

---

[19] For example, the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 804, 116 Stat. 745 (2002) (codified at 28 U.S.C. § 1658), contains a provision modifying the limitation and repose periods for Securities Act claims that is titled "Statute of Limitations for Securities Fraud." Another example is the Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159, § 156, 117 Stat. 1952 (2003) (codified at 15 U.S.C. § 1681p), in which a statute of repose is captioned "Statute of limitations." *See Byrd v. Trans Union LLC*, No. 3:09-609-JFA, 2010 WL 2555119, at *1 (D.S.C. June 18, 2010) (identifying the time limit under this heading as a statute of repose).

- 36 -

*Dutra Const. Co.*, 543 U.S. 481, 490-93 (2005) (reviewing the use of a contested statutory term in contemporary case law to derive its meaning); *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 403 (2003) (same).

Examples of such cases are too numerous to list exhaustively but include opinions from the Supreme Court and courts of appeal, including this court. *E.g., Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1790 (2010) (describing an unqualified bar on securities claims five years after the violation as part of "[t]he applicable statute of limitations"); *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 362 n.8 (1991) (referring to a three-year repose period as "a portion of an express statute of limitations"); *Wike v. Vertrue, Inc.*, 566 F.3d 590, 595 (6th Cir. 2009) (courts "sometimes distinguish" statutes of limitations and repose but also "often employ these terms as synonyms"); *Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1300 n.7 (4th Cir. 1993) ("Limiting periods for bringing court actions are here generally referred to as statutes of limitations, and a statute of repose is a subspecies."); *Alexander*, 952 F.2d at 1218 n.2 ("Although the statute is titled as a 'Statute of limitations,' we refer to it as a statute of repose. . . . Both types of statutes are often referred to as statutes of limitations."); *Abrams v. Civa Specialty Chem. Corp.*, 659 F. Supp. 2d 1225, 1234 n.13 (S.D. Ala. 2009) (citing other examples).

Courts even have referred to Section 13's three-year limit in particular as a statute of limitations. *E.g., Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 (1976) ("Section 13 specifies a statute of limitations of one year . . . [but] not to exceed three years from the

- 37 -

time of offer or sale."); *In re WorldCom Sec. Litig.*, 496 F.3d 245, 250 (2d Cir. 2007) (referring to "the Securities Act's one- and three-year statutes of limitations").

Defendants point to a handful of cases published before 1989 that recognized the distinction between statutes of repose and "ordinary statutes of limitations." *See, e.g.*, *Wayne v. Tenn. Valley Auth.*, 730 F.2d 392, 401-02 (5th Cir. 1984) (states have enacted statutory limits "labeled 'statutes of repose' in order to distinguish them from *ordinary* statutes of limitations" (emphasis added)); *Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir. 1987) (contrasting policy purposes of ordinary statutes of limitations and statutes of repose); *Luzzader v. Despatch Oven Co.*, 834 F.2d 355, 358 (3d Cir. 1987) ("Statutes of repose, unlike *most* statutes of limitations, start to run . . . at the completion of certain conduct by the defendant." (emphasis added)).

Defendants also quote the rule that courts "normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent." *Merck & Co.*, 130 S. Ct. at 1795. Thus, they argue, Congress would have been aware of the cases cited above and would have referred to a statute of limitations only in its narrow sense. But Defendants' cited cases do not support their conclusion. The cases largely concern questions of equitable tolling or accrual, which are not at issue in this case. Moreover, in the quoted passages Defendants provide, courts describe the distinction between statutes of repose and "*ordinary* statutes of limitations" or "*most* statutes of limitations." The use of these modifiers can be reasonably understood to regard statutes of repose as one type of statute of limitations, a subcategory.

- 38 -

More important, Defendants do not account for the abundant examples of cases that use the term "statute of limitations" in the broad, generic sense and often treat statutes of repose as a subcategory.  As the Second Circuit recently explained, "[a]lthough [the two terms] are distinct in theory, the courts . . . have long used the term 'statute of limitations' to refer to statutes of repose, including specifically with respect to § 13 of the Securities Act."  *UBS Am.*, 712 F.3d at 142-43.

In sum, Defendants' reliance on case law to draw an ironclad distinction between statutes of limitation and statutes of repose is misplaced.  The majority of the case law treats repose periods as a subcategory of statute of limitations.

d.  *Rule against repeal by implication*

Finally, Defendants argue that construing the Extender Statute to include statutes of repose would amount to a repeal of Section 13's three-year period without express congressional intention, violating the rule that disfavors repeals by implication.  *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 663-64 (2007).

This argument fails because, as we have concluded in this circuit, the Extender Statute does not repeal Section 13, implicitly or otherwise.  It creates a separate limitations framework that functions as a narrow exception for actions brought by NCUA on behalf of failed credit unions.  "[T]he new statute is simply a preemptive congressional resolution of a discrete controversy that arose long after [Section 13] was enacted.  The [Extender Statute] simply addresses one particular application and carves out an exception.  We see no repeal-by-implication problem."  *Harris v. Owens*, 264 F.3d

- 39 -

1282, 1296 (10th Cir. 2001) (rejecting a repeal-by-implication argument regarding

legislation governing tobacco settlement funds); *see also Strawser v. Atkins*, 290 F.3d

720, 733 (4th Cir. 2002) (creation of a "specific, discrete exception" is not a "repeal by

implication"); *Greenless v. Almond*, 277 F.3d 601, 608 (1st Cir. 2002) ("carve out" is not

a repeal by implication).

*       *       *

After closely examining the text of the Extender Statute—standing alone and in

context—as well as the statutory purpose and uses of the term "statute of limitations" in

federal legislation and case law, we find that each of these sources leads to the same

conclusion:  the Extender Statute applies to Section 13's three-year repose period.[20]

---

[20] A majority of courts have concluded that similar extender statutes referring to
"statutes of limitation" encompass statutes of repose.  *E.g.*, *Waldburger*, 2013 WL
3455775, at *7, -- F.3d -- (CERCLA extender statute includes statutes of repose); *UBS
Am.*, 712 F.3d at 141-44 (FHFA extender statute includes statutes of repose); *McDonald*,
548 F.3d at 779-84 (CERCLA extender statute includes statutes of repose); *NCUA v.
Credit Suisse Sec. (USA) LLC*, 2013 WL 1411769, at * 8, -- F. Supp. 2d -- (D. Kan. 2013)
(NCUA Extender Statute includes statutes of repose); *In re: Countrywide*, 900 F. Supp.
2d at 1062-67 (FHFA extender statute includes statutes of repose).

One circuit concluded differently regarding the CERCLA extender statute.
*Burlington N. & Santa Fe Ry. v. Poole Chem. Co.*, 419 F.3d 355, 360-65 (5th Cir. 2005)
(holding that CERCLA extender statute does not include statutes of repose).  *But see
McDonald*, 548 F.3d at 781-82 (extended critique of *Burlington*); *Waldburger*, 2013 WL
3455775, at *7, -- F.3d -- (rejecting *Burlington* in favor of *McDonald*); *Abrams*, 659 F.
Supp. 2d at 1231-1234, 1236 n.16 (same).  One district court held that the FDIC extender
statute does not apply to a state statute of repose for purposes of whether an amended
complaint could relate back to the filing of an original complaint.  *Resolution Trust Corp.
v. Olson*, 768 F. Supp. 283, 285 (D. Ariz. 1991).  Defendants also cite to two district
court orders that the NCUA Extender Statute does not include statutes of repose.  *NCUA
v. Goldman Sachs & Co.*, No. cv-11-6521-GW (C.D. Cal. Sept. 4, 2012) (final order);

Continued. . .

- 40 -

Defendants' arguments do not convince us otherwise. We therefore affirm the district

court's conclusion on this first issue and turn to the second issue in this appeal.[21]

### B. *Does the Extender Statute Apply to Statutory Claims?*

The Extender Statute sets a minimum limitations period for "any action brought by

[NCUA] as conservator or liquidating agent." 12 U.S.C. § 1787(b)(14). The minimum

period is the longer of: six years for "any contract claim" and three years for "any tort

claim" *or* "the period applicable under State law." *Id.*

Defendants argue that the Extender Statute applies only to state common law

claims.[22] This leads to two further arguments: First, they argue that the Extender Statute

_____

*NCUA v. RBS Sec., Inc.*, No. cv-11-5887-GW (C.D. Cal. Jan. 30, 2012) (tentative order
not yet final). We have carefully reviewed the reasoning in these cases and do not find
them to be persuasive.


[21] We need not consider whether we should apply the rule of "construing
ambiguous statutes of limitations in Government action in the Government's favor."
*O'Gilvie v. United States*, 519 U.S. 79, 92 (1996); *see also FDIC v. Former Officers &
Directors of Metro. Bank*, 884 F.2d 1304, 1309 (9th Cir. 1989) (applying the rule in
an agency action brought on behalf of a failed bank). The district court applied this rule, and
NCUA urges us to follow suit. Defendants argue that this interpretive rule should not
apply because NCUA brings claims on behalf of the credit unions and therefore has only
the rights and benefits the credit unions would have if they had brought the actions
themselves.

We see no reason why this rule would not apply to Securities Act claims by the
NCUA, but it is not needed here. Of the two reasonable interpretations of the Extender
Statute, one is distinctly more plausible even without the rule of favorable construction:
that the Extender Statute includes periods of repose as a subcategory of statute of
limitations.

[22] Defendants interpret the scope of the Extender Statute's application to types of
claims as shown below:

Continued. . .

- 41 -

cannot apply to NCUA's state law claims because these claims are statutory and not common law claims.  Second, Defendants argue that the Extender Statute cannot apply to the Securities Act claims because they are statutory claims and because they are federal, not state law, claims.  As we already have discussed, without the Extender Statute, the Securities Act claims are untimely by virtue of Section 13's three-year repose period.

We discuss each of these arguments in turn.

## 1.  **The Extender Statute and statutory claims**

Defendants argue that the Extender Statute does not apply to statutory claims.  We discuss the ordinary meaning of the Extender Statute in context and conclude that it applies to statutory claims.

### a.  *The statutory language is ambiguous*

The Extender Statute applies to "any action brought by" NCUA.  12 U.S.C. § 1787(b)(14).  "Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind."  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (quotations omitted); *see also Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 117 (2d Cir. 2007) ("As the Supreme Court has frequently observed, use of the word 'any' in statutory text generally indicates Congress's intent to sweep broadly to reach all varieties of the item referenced."); *United Transp. v. Dole*, 797 F.2d 823, 829 (10th Cir.

|        | Statutory | Common law |
|--------|-----------|------------|
| Federal | No        | No         |
| State  | No        | Yes        |

- 42 -

1986) (interpreting the phrase "any action" expansively).  The Extender Statute uses the word "any" four separate times in describing the types of claims it covers.

On the other hand, the Extender Statute's two-part limitations structure provides a minimum limitations period of six years for "any contract claim" and three years for "any tort claim."  12 U.S.C. § 1787(b)(14).  Defendants argue that these provisions refer only to common law contract and tort claims and unambiguously exclude all statutory claims. They argue that Congress easily could have referred to *all* state law claims and that its choice to mention only these two categories, which they consider to be common law categories, should be interpreted as an exclusion of all other categories.

Defendants' theory rests entirely on the premise that Congress used the terms "contract claim" and "tort claim" in the narrowest possible sense, referring only to common law claims.  It is possible but far from obvious that Congress adopted this narrow definition.  The statute itself does not require this definition.  For example, it does not refer to "common law."  It refers to "*any* contract claim" and "*any* tort claim."  12 U.S.C. § 1787(b)(14)(A)(i) & (ii) (emphases added).

Both of these terms also have meanings much broader than those Defendants ascribe.  A tort is often defined as "[a] civil wrong, other than breach of contract, for which a remedy may be obtained, usu[ally] in the form of damages; a breach of duty that the law imposes on persons who stand in a particular relation to one another."  Black's

- 43 -

Law Dictionary 1626 (9th ed. 2010).[23]   Similarly, the entry for contract includes this definition:  "1. An agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law."  *Id.* at 365.  Neither definition excludes statutory claims.[24]

---

[23] The fifth version of Black's Law Dictionary, which was current when FIRREA was enacted, contained a similar definition:  "A private or civil wrong or injury, other than breach of contract, for which the court will provide a remedy . . ."  Black's Law Dictionary 1335 (5th ed. 1979).

[24] Other courts have noted the broader meaning of these terms.  "Courts often use the phrase 'sounding in tort' to distinguish a claim from one 'sounding in contract.'  The distinction may affect such issues as remedies, statutes of limitations, or choice of law."  *In re Holliday*, No. 03-00946, 2007 WL 4457925, at *1 (Bankr. S.D. Iowa Dec. 6, 2007) (unpublished) (federal statutory claims "sound[ed] in tort"); *see also Oriente Comm., Inc. v. Am. Flag Vessel, M/V Floridian*, 529 F.2d 221, 221-22 (4th Cir. 1975) (distinguishing federal statutory claims that "aris[e] out of tort" from those that "sound solely in contract").

Discussing the "commonly accepted meaning" of a tort claim, the Fifth Circuit explained that "[s]tatutes may create duties on which tort liability is premised[, but] . . . [n]ot all statutory claims sound in tort."  *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 736 (5th Cir. 2010).  "'The precise nature of the claim is ordinarily identified by examining the damages alleged:  when the damages are purely economic, the claim sounds in contract, but a ... claim alleging damages for death or personal injury sounds in tort.'"  *Id.* (quoting *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 705 (Tex. 2008)).

Kansas and California also use these broader meanings of tort and contract claims. In Kansas, "whether a claim sounds in tort or contract is determined by the nature and substance of the facts alleged in the pleadings," including "the nature of the duty alleged to have been breached."  *David v. Hett*, 270 P.3d 1102, 1114 (Kan. 2011) (claim sounds in tort if plaintiffs allege breach of common-law or statutory duty independent from any contract); *see also Malone v. Univ. of Kan. Med. Ctr.*, 552 P.2d 885, 888 (Kan. 1976) (same).

In California, "to determine whether [a claim] sounds in contract or in tort the *gravamen* of the facts giving rise to the right to recovery must be examined."  *Mitchell*

Continued. . .

- 44 -

In short, the terms "tort claim" and "contract claim" can be read to encompass statutory and common law claims or only the latter.  Because these terms as used in the Extender Statute are susceptible to more than one reasonable interpretation, they are ambiguous.

   b.  *Resolving ambiguity in the statutory language*

To resolve the ambiguity, we examine the purpose and origins of the statute.  We conclude that Congress meant the Extender Statute to apply to statutory as well as common law claims.

   i)  <u>Statutory purpose</u>

Examining FIRREA's statutory purpose may help us to "decode[]" the Extender Statute's ambiguous text.  *In re Geneva Steel Co.*, 281 F.3d at 1178.  As we already have discussed, Congress enacted FIRREA to "enhance the regulatory and enforcement powers" of NCUA.  Pub. L. No. 101-73, 103 Stat. 183 (preamble).  FIRREA's sponsor explained that the statute's extender provisions should "be construed to maximize potential recoveries."  135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (statement of Sen. Riegle).

Applying the Extender Statute to statutory claims serves the statute's purpose by providing NCUA sufficient time to investigate and file all potential claims once it

_____

*Land & Imp. Co. v. Ristorante Ferrantelli, Inc.*, 158 Cal.App. 4th 479, 487 (Cal. Ct. App. 2007) (considering statutory claim); *see also Tameny v. Atl. Richfield Co.*, 610 P.2d 1330, 1334 (Cal. 1980) (considering statutory wrongful discharge claim).

assumes control of a failed credit union.  *See UBS Am.*, 858 F. Supp. 2d at 316 (extender

statute's purpose is to give federal agencies "more time to decide whether and how to

pursue any claims [they] inherited" from failed financial institutions).  By contrast,

Defendants have pointed to nothing in the statute or its legislative history that

demonstrates the statute's purpose would be served by limiting the Extender Statute to

common law claims.  Indeed, restricting the statute to such a narrow portion of potential

claims would flatly contradict FIRREA's explicit purpose.

ii)  Origin of the Extender Statute

Section 2415 and its judicial interpretation elucidate the origin and meaning of the

Extender Statute.  Section 2415 is the general or default statute of limitations for all

claims brought by the United States when no other federal statute of limitations applies.

*See* 28 U.S.C. § 2415; *see also Phillips Petroleum Co. v. Lujan*, 4 F.3d 858, 860 (10th

Cir. 1993); *United States v. Sunoco, Inc.*, 501 F. Supp. 2d 641, 648-49 (E.D. Penn. 2007).

Before FIRREA, Section 2415 governed claims brought by NCUA and FDIC.  *NCUA v.

RBS Sec., Inc.*, 900 F.Supp.2d 1222, 1239 (D. Kan. 2012); *see, e.g.*, *Bachman*, 894 F.2d

at 1237; *FDIC v. Hinkson*, 848 F.2d 432, 433 (3d Cir. 1988).

Congress used Section 2415 as a model in drafting FIRREA.  *See supra* Section

I.A.3 at 8-9.  "When, as here, a statute 'is obviously transplanted from another legal

source, whether the common law or other legislation, it brings the old soil with it.'"

*United States v. Adame-Orozco*, 607 F.3d 647, 654 (10th Cir. 2010) (quoting Felix

Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537

(1947)).  This "old soil" includes the judicial precedent interpreting the precursor statute. *See* Singer & Singer, 2B *Sutherland Statutory Construction* § 50:1, at 143 ("All legislation is interpreted in the light of the . . . scheme of jurisprudence existing at the time of its enactment.").  Courts "normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent."  *Merck & Co.*, 130 S. Ct. at 1795.  The judicial precedent interpreting Section 2415 at the time the Extender Statute was enacted is therefore relevant here.

When Congress drafted the Extender Statute, courts had often applied Section 2415 to statutory claims.  *E.g.*, *United States v. Deluxe Cleaners & Laundry, Inc.*, 511 F.2d 926, 929 (4th Cir. 1975) (applying Section 2415 to claim under Service Contract Act of 1965); *United States v. Limbs*, 524 F.2d 799, 800 (9th Cir. 1975) (same, as to Federal Employees' Compensation Act claim); *United States v. P/B STCO* 213, 756 F.2d 364, 370 (5th Cir. 1985) (same, as to Federal Water Pollution Control Act claim); *United States v. Gera*, 409 F.2d 117, 119-20 (3d Cir. 1969) (same, as to Medical Care Recovery Act claim); *FDIC v. Hudson*, 673 F. Supp. 1039, 1041 (D. Kan. 1987) (same, as to multiple claims including a state corporate law claim).

Notably, *Limbs* clearly rejected arguments analogous to the Defendants' argument here—that Section 2415 applied only to common law claims and not to statutory claims. "The fact that the government's right to reimbursement derives from statute rather than common law does not affect characterization of the claim as quasi-contractual" for purposes of applying Section 2415.  524 F.2d at 802.

- 47 -

This precedent shows that the terms "tort claim" and "contract claim" were construed broadly in the context of Section 2415. When Congress "transplanted" Section 2415's framework to the Extender Statute, it brought this "old soil" with it. *Adame-Orozco*, 607 F.3d at 654 (quotations omitted). If Congress had meant to curtail the scope of the limitations framework, it would have said so expressly.

\*       \*       \*

Given the Extender Statute's purpose and history, we conclude that it applies to statutory claims as well as to common law claims. The Extender Statute therefore applies to NCUA's state law claims.

2. **The Extender Statute and federal claims**

Defendants argue that the Extender Statute does not apply to federal claims. We begin by reviewing the language of the Extender Statute and find its applicability to federal claims to be ambiguous. We then examine the language in context and conclude that the statute covers federal claims, including the Securities Act claims at issue here. Finally, we consider and reject Defendants' remaining arguments on this question.

a. *The statutory language is ambiguous*

As we previously discussed, the Extender Statute applies to "*any* action brought by" NCUA. 12 U.S.C. § 1787(b)(14) (emphasis added). The statute repeatedly uses the modifier "any" in describing the types of claims it covers. It does not expressly restrict federal claims.

On the other hand, the statute refers only to "the period applicable under *State*

- 48 -

law," and does not use the phrase "federal law." *Id.* (emphasis added).  Specifically, the Extender Statute sets a limitations period for any action by NCUA, but allows the state law period to govern if it is longer than that provided in the Extender Statute.  There is no similar provision that would allow a longer federal limitations period to govern.

We could easily infer from this omission that Congress meant the Extender Statute to trump any other federal limitations period.  But Defendants infer much more.  They argue that Congress omitted reference to other federal limitations not to exclude other federal *limitations periods*, but to exclude all federal *claims* from the Extender Statute's coverage.  Looking only at the statute's language and without considering context, this interpretation is possible.

But a different construction is also reasonable:  the Extender Statute sets a minimum limitations period for *any* action brought by NCUA, which includes federal and state actions.  It then provides NCUA the benefit of even longer periods where allowed under state law but does not extend the same benefit for longer periods under federal law.  Under this reading, it makes sense that the statute does not provide guidance for resolving conflicts between federal limitations periods because no such conflicts exist—the Extender Statute is a uniform limitations framework that governs all federal claims filed by NCUA on behalf of failed credit unions.  Thus, when the Extender Statute applies, it displaces any other federal limitations period.

This second interpretation is more likely because the Extender Statute expressly covers "any action" and does not expressly exclude any type of claim from its coverage.

- 49 -

Moreover, nothing in the statute's language suggests these references to state law define its scope. Rather, state law is mentioned as one of two alternative limitations periods. For example, the limitations period for any contract claim "shall be . . . the longer of (I) the 6-year period beginning on the date the claim accrues; *or* (II) the period applicable under State law." 12 U.S.C. § 1787(b)(14)(A)(i). The first alternative is plainly not limited to state law claims.

Under the more natural reading, the statutory language covers federal and state law claims. But because Defendants' interpretation is at least plausible, we find the language is ambiguous. We consult sources beyond the statutory text to resolve the ambiguity.

   b. *Resolving ambiguity in the statutory language*

The purpose and origin of the Extender Statute indicate that it covers federal actions.

      i) <u>Statutory purpose</u>

For the same reasons already discussed, statutory purpose supports the Extender Statute's application to federal actions. FIRREA's stated purpose includes "strengthen[ing] civil sanctions . . . for . . . damaging depository institutions and their depositors." Pub. L. No. 101-73, 103 Stat. 183. The Extender Statute's purpose is to facilitate recoveries by NCUA on behalf of failed credit unions. It fulfills this purpose by providing sufficient time to investigate and file potential federal claims after assuming control of a failed credit union. *See UBS Am.*, 858 F. Supp. 2d at 316. These purposes

- 50 -

are served by applying the Extender Statute to federal claims.

Consider the basic function of the Extender Statute:  it sets a limitations period for "any action" brought by a *federal* agency in its capacity as conservator or liquidating agent of insolvent or undercapitalized *federally* insured credit unions.  Many federal laws and potential federal actions are relevant in these circumstances.  If Congress had meant to preserve the NCUA's ability to pursue only state claims, while excluding the many potential federal claims that would enable NCUA to fulfill its mission, it would have said so expressly.  *See FHFA v. Countrywide*, 900 F. Supp. 2d at 1067 (rejecting defendant's "unlikely assertion that a '*federal* statute applying to a *federal* agency . . . *only* applies to *state* law claims'").

### ii) Origin of the Extender Statute

Section 2415 again provides insight.  As we previously discussed, this provision served as a model when Congress drafted the Extender Statute in 1989.  At that time, courts routinely applied Section 2415 to federal claims—including those brought by FDIC and NCUA.  *E.g.*, *Deluxe Cleaners & Laundry, Inc.*, 511 F.2d at 929; *Limbs*, 524 F.2d at 800.  Congress was presumably aware of this enforcement practice and "aware of relevant judicial precedent," *Merck & Co.*, 130 S. Ct. at 1795, when it transplanted this well-established limitations framework from Section 2415 to the Extender Statute.  If Congress had meant to exclude federal claims from the scope of the new statute, it would have said so expressly.

- 51 -

c. *Defendants' final arguments*

Defendants' two final arguments also fail.

First, Defendants argue that applying the Extender Statute to federal claims would produce absurd results if the statute displaced a longer federal limitations period. The only example Defendants point to is the Clayton Act, which contains a four-year limitations period. *See* 15 U.S.C. § 15b. We are not aware of any case in which NCUA or FDIC has brought a claim on behalf of a failed credit union under the Clayton Act, and Defendant has not cited any. But assuming such a claim is possible, the limitations period would not necessarily end sooner under the Extender Statute. The Extender Statute's three-year limit would not commence until NCUA took over the failed credit union, while the Clayton Act's four-year limit could commence earlier. The Extender Statute operates to enlarge the time limits in all or almost all cases, while providing a uniform limitations period for federal claims. The remote possibility that the time period could be contracted in a small number of hypothetical claims does not constitute an absurd result.

Second, Defendants argue in the alternative that the Extender Statute is a "gap filler" and applies only where no other federal limitations period exists. Aplt. Br. at 53. They cite to cases interpreting Section 2415 in this way and argue that Congress intended the same construction for the Extender Statute. Because an existing federal statute of limitations is available—Section 13—Defendants argue that the Extender Statute should not apply. But Defendants overlook a key difference in the language of the two statutes

- 52 -

that thwarts this argument.  Section 2415 provides that its limitations period shall apply

"except as otherwise provided by Congress."  28 U.S.C. § 2415.  By contrast, Congress

excluded this phrase when it drafted the Extender Statute.  *See* 12 U.S.C. § 1787(b)(14).

This specific exclusion indicates that Congress drafted the Extender Statute to provide a

uniform limitations period for all federal claims brought by NCUA and not as a gap filler.

"[C]ourts presume a different intent when a legislature omits words used in a prior statute

on a similar subject."  Singer & Singer, 2B *Sutherland Statutory Construction* § 51:2, at

212-13.

* * *

After careful review of the statutory language and its context, we hold that the

Extender Statute applies to federal and state statutory claims.[25]

---

[25] Other courts also have concluded that materially similar extender statutes cover federal and state statutory claims.  *E.g.*, *UBS Am.*, 712 F.3d at 143-44 (FHFA extender statute applies to federal and state securities claims); *FDIC v. Countrywide Fin. Corp.*, No. 2:12-CV-4354 MRP (MANx), 2012 WL 5900973 (C.D. Cal. Nov. 21, 2012) (unpublished) (FDIC extender statute applies to Securities Act claims); *FHFA v. Countrywide Fin. Corp.*, 2012 WL 5275327, at *2 (C.D. Cal. Oct. 18, 2012) (FHFA extender statute applies to statutory securities claims); *FDIC v. Zibolis*, 856 F. Supp. 57, 60-61 (D.N.H. 1994) (FDIC extender statute applies to state statutory claims, which could sound either in contract or tort for purposes of selecting the appropriate limitations period).

We are not aware of any court decision accepting Defendants' theory that this or any materially similar extender statute applies only to state common law claims.

- 53 -

### III. **CONCLUSION**

For the foregoing reasons, we affirm the district court's denial of Defendants'

motion to dismiss.