**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

NATIONAL CREDIT UNION ADMINISTRATION BOARD,

Plaintiff,

v.

RBS SECURITIES INC. formerly known as Greenwich Capital Markets, Inc., et al.,

Defendants.

Case No. 11-cv-2340 JWL

Judge John W. Lungstrum

**Oral Argument Requested**

**MEMORANDUM IN SUPPORT OF THE RBS DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF NCUA'S PROPOSED EXPERT JOHN K. WALD**

**TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ........................................................................................................1

II. FACTUAL BACKGROUND.......................................................................................2

A. Although It Bears The Burden Of Proof, NCUA Offers No Affirmative Expert Report Containing Quantitative Materiality Analyses. ...............................2

B. RBS Offers A Rebuttal Expert Report From Dr. Ethan Cohen-Cole That Demonstrates, Quantitatively, That NCUA Cannot Prove Materiality. ..................2

C. Dr. Wald Submits A Report Containing Opinions He Is Not Qualified To Give, And That Go Far Outside The Scope Of Dr. Cohen-Cole's Report. .............3

III. QUESTION PRESENTED..........................................................................................4

IV. LEGAL STANDARD..................................................................................................4

V. ARGUMENT .............................................................................................................5

VI. CONCLUSION...........................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Capital Solutions, LLC v. Konica Minolta Bus. Solutions U.S.A., Inc.*,
No. 08-2027-JWL, 2010 WL 561721 (D. Kan. Feb. 12, 2010)....5

*Conroy v. Vilsack*,
707 F.3d 1163 (10th Cir. 2013) ....5, 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)....3, 4

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)....4

*Milne v. USA Cycling Inc.*,
575 F.3d 1120 (10th Cir. 2009) ....5, 7

*S.E.C. v. Tourre,*
950 F. Supp. 2d 666 (S.D.N.Y. 2013)....6

*TK-7 Corporation v. Estate of Barbouti*,
993 F.2d 722 (10th Cir. 1993) ....7

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*,
173 F.R.D. 675 (D. Kan. 1997)....7

**Rules**

Federal Rule of Evidence 702....4

## I. INTRODUCTION

In a reply report, NCUA's proffered expert Dr. John K. Wald criticizes Dr. Ethan Cohen-Cole's econometric models measuring the ranges of risk disclosed in the relevant prospectus supplements. Dr. Wald's opinions are based on (1) his views of how RMBS investors in the 2005–2007 timeframe made their purchase decisions, including the importance they purportedly placed on underwriting guideline compliance, and (2) his criticisms of the mechanics of Dr. Cohen-Cole's econometric models. While Dr. Wald's criticisms of the mechanics and methodologies behind Dr. Cohen-Cole's econometric models are off-base, this motion does not challenge his credentials to offer them. Dr. Wald, however, has no qualifications or experience allowing him to opine about how private-label RMBS investors made purchase decisions between 2005 and 2007, including whether underwriting guideline compliance was important to them, or whether they used models similar to Dr. Cohen-Cole's. As he explains in his own CV, Dr. Wald's research focuses on "how legal differences between states and countries affect firm financing decisions as well as on debt covenant agreements, CEO compensation, and foreign exchange exposure." Indeed, his only experience in trading bonds of any type came in an entry-level position right out of college, 15 years before the relevant time period, and related to securities dissimilar to the ones at issue here. Given his complete lack of relevant practical or academic experience, Dr. Wald should not be permitted to offer opinions on what participants in the private-label RMBS markets considered important, or what their investment processes were, between 2005 and 2007.

## II. FACTUAL BACKGROUND

### A. Although It Bears The Burden Of Proof, NCUA Offers No Affirmative Expert Report Containing Quantitative Materiality Analyses.

The April 10, 2014 Master Discovery Protocol required the party bearing the burden of proof on an issue to offer affirmative expert reports on August 14, 2015. ECF No. 314 § 11. Although NCUA must demonstrate that the alleged misrepresentations it challenges were material, NCUA offered only one materiality report (from Mark Sunshine) on that date. As described in RBS's concurrently filed motion to exclude Mr. Sunshine's opinions, that report offered no quantitative or empirical materiality analysis.

### B. RBS Offers A Rebuttal Expert Report From Dr. Ethan Cohen-Cole That Demonstrates, Quantitatively, That NCUA Cannot Prove Materiality.

On October 16, 2015, RBS expert Dr. Ethan Cohen-Cole submitted a rebuttal to both Mr. Sunshine's report and to the report of Steven I. Butler, NCUA's proffered re-underwriting expert. Ex. 1 (Cohen-Cole Report). Using his model, Dr. Cohen-Cole generated a range of possible expected losses based on the loan characteristics *disclosed* to investors in the prospectus supplements. *Id.* ¶ 68. Because the prospectus supplements disclose "bands" or strata of information, Dr. Cohen-Cole created 300 hypothetical loan pools that would be consistent with the prospectus supplements' disclosed characteristics. *Id.* ¶ 69. Based on his analysis, Dr. Cohen-Cole quantitatively determined the "range of risk" a reasonable investor should have expected based on prospectus supplement disclosures. *Id.* ¶ 70. Then, Dr. Cohen-Cole determined the risk a reasonable investor should have expected assuming that the loans had the characteristics NCUA claims based on Mr. Butler's re-underwriting analysis. *Id.* ¶¶ 66–67. For all but two certificates, the level of expected losses Dr. Cohen-Cole calculated using Mr. Butler's re-underwriting results was within the range disclosed in the prospectus supplements. *Id.* ¶ 80. And even for the remaining two certificates, the difference in losses was covered by credit

enhancement for those certificates. *Id.* ¶ 81. Based on these empirical results, Dr. Cohen-Cole concluded that NCUA's allegations, even if true, "would not have had any impact on a reasonable investor's expected investment risk." *Id.* ¶ 86.

### C. Dr. Wald Submits A Report Containing Opinions He Is Not Qualified To Give, And That Go Far Outside The Scope Of Dr. Cohen-Cole's Report.

On November 20, 2015, the deadline for "reply" expert reports, Dr. Wald submitted his expert report. Ex. 2 (Wald Report). Dr. Wald's opinions can be grouped into two broad categories. *First*, he opines on how RMBS investors would have evaluated subprime and Alt-A RMBS between 2005 and 2007, and claims (without quantitative or statistical analysis) that Dr. Cohen-Cole's model ignores "the importance that every participant in the RMBS market, including . . . investors, placed on compliance with underwriting guidelines." *Id.* §§ 4, 4.1, 4.2. Dr. Wald therefore concludes that Dr. Cohen-Cole's model is "inconsistent" with how a reasonable RMBS investor would have evaluated a subprime or Alt-A RMBS between 2005–2007, and is also "inconsistent with the applicable legal standard." *Id.* §§ 4, 4.2. *Second*, Dr. Wald criticizes Dr. Cohen-Cole's use of certain data and his application of certain methods. *Id.* §§ 5.1–6.2. Although RBS does not agree with Dr. Wald's technical criticisms of Dr. Cohen-Cole's model, RBS seeks in this motion to exclude only Dr. Wald's opinions falling into the "*first*" category described above.[1]

Dr. Wald's CV indicates his lack of qualifications to opine on what was important to investors in the RMBS market in 2005 to 2007. *Id.* at Ex. 1. During this time, he was a college professor, and none of his research involved RMBS. Dr. Wald also has little, if any, other relevant practical experience. From 1986 to 1990, immediately after he graduated from college,

[1] To the extent Dr. Wald purports to offer an opinion that there is a connection between underwriting guideline compliance and default risk, *see id.* § 5.2, that opinion should be excluded for the reasons set forth in RBS's concurrently-filed *Daubert* motion regarding credit risk.

Dr. Wald worked as a fixed income analyst at Bear Stearns, where, as one part of his responsibilities, he analyzed and traded RMBS for institutional clients. *Id.* ¶ 14; Ex. 3 (Wald Dep. Tr.) at 14:3–15:7. But those RMBS were collateralized by prime loans or were agency RMBS (*i.e.*, those issued or backed by Freddie Mac, Fannie Mae, or Ginnie Mae); Dr. Wald analyzed fewer than a dozen private-label non-agency RMBS. Ex. 3 at at 26:21–29:1. Even more, those non-agency RMBS were not backed by subprime loans, and only possibly by Alt-A loans. *Id.* at 31:11–32:2. Aside from generally teaching about RMBS in one of his classes (and even then, just "plain-vanilla agency securities") and one small consulting job in 1991 (also not involving private-label non-agency RMBS), Dr. Wald has not done any work or published any papers regarding RMBS since 1991. *Id.* at 30:20–31:4; 33:18–25; 36:1–20.

## III. QUESTION PRESENTED

Should Dr. Wald's opinions regarding what was material to RMBS investors and the models used by RMBS investors between 2005 and 2007 be excluded because he lacks the qualifications to offer them?

## IV. LEGAL STANDARD

Under Federal Rule of Evidence 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." These requirements are based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and impose on district courts a "gatekeeping role" relating to the admission of expert testimony. *Id.* at 597; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999). As the testimony's

proponent, NCUA "bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013).

## V. ARGUMENT

An expert must be qualified in the "particular field" to which the proposed testimony relates, or that field must fall "within the reasonable confines" of his or her expertise. *Conroy*, 707 F.3d at 1169. Among other factors, courts will consider whether the expert has extensive practical experience with the subject matter, whether that practical experience occurred recently, and whether the expert has published relevant articles. *See Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1133–34 (10th Cir. 2009); *Capital Solutions, LLC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, No. 08-2027-JWL, 2010 WL 561721, at *3 (D. Kan. Feb. 12, 2010) (finding witness's "short period" of experience in the field of business equipment leasing two years before his deposition insufficient to qualify him as an expert concerning lost profits in that field). Here, Dr. Wald's practical experience with subprime and Alt-A RMBS is minimal at best and occurred more than 25 years ago. And he has never published a single relevant article on the subject.

Dr. Wald is an economist and statistician. Although he has some experience in finance generally, Dr. Wald has no experience analyzing RMBS during the relevant period; he "wasn't active in [the mortgage] marketplace in 2005 to 2007." Ex. 3 at 72:12–14. Instead, Dr. Wald relies on his brief time as a fixed income analyst at Bear Stearns. But that was 25 years ago and, even then, he spent only part of his time at Bear Stearns on RMBS. *Id.* at 26:3–12. He worked on only "a very small number" of private-label non-agency RMBS there, and he freely concedes that "there were a number of changes in the mortgage-backed security market" between 1991 and 2005. *Id.* at 28:12–29:1; 40:15–41:1. Dr. Wald's experience at Bear Stearns was also limited

to offerings backed by prime loans, not subprime or Alt-A loans. *Id.* at 27:3–29:1; 31:11–32.2. Even Dr. Wald testified he doesn't have "as much expertise" in subprime and Alt-A RMBS:

> Q: Do you consider yourself an expert in the process of how investors analyzed subprime or alt-A mortgage-backed securities from 2005 to 2007?
>
> A: I don't think I have as much expertise in it, but I think I still have a fair bit of expertise because I don't think the process was that different. And I base that upon the depositions that I've read, and my general knowledge about how this marketplace worked.

*Id.* at 244:18–23. Dr. Wald's testimony that he "do[es]n't think the process was that different" between prime and subprime RMBS does not make him an expert in both. *See Daubert*, 509 U.S. at 590 ("[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation."); *Conroy*, 707 F.3d at 1169 (excluding expert for lack of qualifications, despite the fact that it was "certainly possible" that the expert's opinions related to her expertise, because "it was up to [the plaintiff] to establish that connection," and "conclusory" assertions could not establish that connection); *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 677 (S.D.N.Y. 2013) (excluding expert's opinion that offering documents in connection with a collateralized debt offering provided all "economically material" information because "[h]e has no experience in the CDO industry apart from acting as an expert witness, yet he intends to opine about what information would and would not matter to CDO investors").

Dr. Wald's deposition testimony confirms he is not qualified here—he admitted that he "can't really speak to what individual investors did" and that he "wasn't particularly active in the mortgage markets at [the] time." Ex. 3 at 192:23–25. Similarly, Dr. Wald testified that he does not "have any particular expertise" as it relates to any underwriting guidelines in particular and that investors' consideration of guidelines is "not part of [his] area of greatest expertise." *Id.* at 49:5–12; 99:11–100:6. And he has never published a paper dealing with RMBS. *Id.* at 33:18–25.

*Milne* is instructive. There, plaintiffs submitted expert testimony regarding the negligence of organizers of a mountain bike race. 575 F.3d at 1133. But plaintiffs' expert "had no experience in organizing, supervising, or studying mountain bike races" and was not "even an experienced mountain bike rider." *Id.* Rather, the expert "had only participated in one or two mountain bike races, and those were more than 15 years ago." *Id.* The court further found that the expert "had never published any articles about bicycle racing of any sort, let alone mountain bike racing." *Id.* Even though the expert had "as a police officer, investigated hundreds of vehicle-bicycle collisions" and had "experience organizing and supervising paved road bike races," the Tenth Circuit held that "the district court reasonably concluded that his experience was insufficient to qualify him to testify about mountain bike races." *Id.* Thus, *Milne* emphasizes the importance of an expert's qualifications in the area of his testimony, not to a potentially related area. *Id.* Likewise here, Dr. Wald cannot leverage a brief stint a quarter century ago into full-fledged expertise in investor-side materiality.[2]

Finally, Dr. Wald's opinion that Dr. Cohen-Cole's econometric models are "inconsistent with the applicable legal standard" because they do not "analyze how [Mr. Butler's allegations] would have been viewed by a reasonable investor," Ex. 2 at 10–11, is both beyond his experience because he lacks relevant qualification (as set forth above) and also the improper subject of expert testimony. *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 173 F.R.D. 675, 688 (D. Kan. 1997) (excluding proffered expert's opinion that "attempt[ed] to interpret the meaning and applicability of [the law]," because he was not "permitted to do [so] as an expert").

---

[2] Throughout his report, Dr. Wald also repeats what Mr. Butler and Mr. Sunshine have already "explained," "found," "identified," "pointed out," or "stated." Ex. 2 ¶¶ 23–30. To the extent Dr. Wald cites these reports to support his own conclusions, it is improper; Dr. Wald does not profess to have conducted his own analyses regarding these subjects and, in fact, is not qualified to do so, as described above. *See TK-7 Corporation v. Estate of Barbouti*, 993 F.2d 722, 732–33 (10th Cir. 1993) (excluding testimony of expert who, without having independent expertise or familiarity with the issues, merely "adopted the projections of" another expert).

## VI. CONCLUSION

For the foregoing reasons, RBS respectfully requests that the Court issue an order excluding NCUA's proposed expert Dr. John K. Wald from offering any opinions concerning what was or was not material to reasonable investors in subprime or Alt-A RMBS between 2005 and 2007, and what the investment processes of such investors were during that time frame, including any opinions regarding whether Dr. Cohen-Cole's model is inconsistent with either how investors made investment decisions or the applicable legal standard.

DATED: March 22, 2016

Respectfully Submitted,

By: */s/ Jeffery A. Jordan*_______

Jeffery A. Jordan, #12574
jjordan@foulston.com
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
Telephone: (316) 267-6371
Facsimile: (316) 267-6345

R. Alexander Pilmer, CA Bar No. 166196
alexander.pilmer@kirkland.com
David I. Horowitz, CA Bar No. 248414
david.horowitz@kirkland.com
Derek Milosavljevic, CA Bar No. 255134
derek.milosavljevic@kirkland.comJay L. Bhimani, CA Bar No. 267689
jay.bhimani@kirkland.com
Kristin E. Rose, CA Bar No. 278284
kristin.rose@kirkland.com
Gavin C.P. Campbell, CA Bar No. 286270
gavin.campbell@kirkland.com
Colin J. Michel, CA Bar No. 291184
colin.michel@kirkland.com
Heather F. Canner, CA Bar No. 292837
heather.canner@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071

Telephone: (213) 680-8400
Facsimile: (213) 680-8500
**Admitted *Pro Hac Vice***

Attorneys for Defendants
*RBS Securities Inc. (f/k/a Greenwich Capital Markets, Inc.), RBS Acceptance Inc. (f/k/a Greenwich Capital Acceptance, Inc.), and Financial Asset Securities Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of March, 2016, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Jeffery A. Jordan*
Jeffery A. Jordan