IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NATIONAL CREDIT UNION )
ADMINISTRATION BOARD, )
 )
        Plaintiff, )
 )
v. )   Case No. 11-2340-JWL
 )
RBS SECURITIES INC., et al., )
 )
        Defendants. )
 )
_____)

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion by defendants RBS Securities Inc., RBS Acceptance Inc., and Financial Assets Securities Corp. (collectively "RBS") to exclude expert opinions of Steven Butler (Doc. # 740), in which motion defendants Nomura Home Equity Loan, Inc. ("Nomura") and NovaStar Mortgage Funding Corporation ("NovaStar") have joined (Doc. ## 984, 985). For the reasons set forth below, the motion is **denied**.

      1.      Plaintiff retained Steven Butler to provide expert opinions based on his re-underwriting of various mortgage loans underlying the RMBS at issue in the case. Mr. Butler relied in part on credit reports for individual borrowers that were obtained for him by Opus Capital Markets LLC ("Opus") from CBCInnovis, Inc. ("CBCInnovis"). Defendants argue that Mr. Butler obtained those credit reports in violation of the federal

Fair Credit Reporting Act (the "FCRA" or the "Act"). Based on that argument, defendants request that Mr. Butler's expert opinions—or alternatively, those opinions based on credit reports obtained illegally—be excluded. Defendants also request an instruction to inform the jury of the FCRA violations.

The FCRA provides as follows:

> A person shall not use or obtain a consumer report for any purpose unless—
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. § 1681b(f). The parties agree that the credit reports obtained by Mr. Butler in this case qualify as "consumer reports" for purposes of the Act. *See id.* § 1681a(d) (defining "consumer report"). The Act lists various permissible purposes in Subsection 1681b(a), which provides that a consumer reporting agency may furnish a consumer report under the listed circumstances "and no other." *See id.* § 1681b(a).

Defendants argue that Mr. Butler violated the FCRA based on the following facts: in a 2009 contract with CBCInnovis, Opus certified only account review as a permissible purpose for using consumer reports provided to Opus by CBCInnovis; as conceded in his deposition, Mr. Butler did not use the credit reports here for account review; and there is no other certification of a permissible purpose, as required by the Act, for

2

obtaining the credit reports in this case.

2. In listing permissible purposes in Subsection 1681b(a), the Act first provides that consumer reports may be furnished in response to a court order, *see id.*, and plaintiff argues that the Master Protective Order ("MPO") issued in this case provides the requisite court order authorizing plaintiff to obtain the credit reports for use by its expert. Paragraph 18 of the MPO provides in relevant part as follows:

> To the extent any federal or state law or other legal authority governing the disclosure or use of Non-Party Borrower Information (hereinafter, "Non-Party Borrower Information Law") permits disclosure of such information pursuant to an order of a court, this Order shall constitute compliance with such requirement. To the extent any Non-Party Borrower Information Law requires a Producing Party and/or Receiving Party to obtain a court-ordered subpoena or give notice to or obtain consent, in any form or manner, from any person or entity before disclosure of any Non-Party Borrower Information, the Court finds that, in view of the protections provided for the information disclosed in this Order, the volume of documents to be produced and the ongoing oversight of the Court, there is good cause to excuse such requirement, and this Order shall constitute an express direction that the Producing Party and/or Receiving Party is exempted from obtaining a court ordered subpoena, having to notify and/or obtain consent from any person or entity prior to the disclosure of Non-Party Borrower Information in the Related Actions, and/or having to provide a certification that notice has been waived for good cause. . . .

The MPO defines "Non-Party Borrower Information" to mean

> any information that constitutes "nonpublic personal information" within the meaning of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6802, et seq. and its implementing regulations, including, but not limited to, any portion of a mortgage loan file, spreadsheet or other document or data set that includes financial or credit information for any person (including any credit history, report or score obtained on any such person to determine the individual's eligibility for credit) together with personally identifiable information with respect to such person, including, but not limited to,

3

>     name, address, Social Security number, loan number, telephone number,
>     or place or position of work.

Thus, the Act provides that credit reports may be obtained and furnished pursuant to court order, and by its plain terms, the MPO provides the necessary order for compliance with that requirement of the Act. The parties stipulated to the inclusion of these provisions in the MPO.[1]

Defendants do not dispute that credit reports generally fall within the scope of Section 18 of the MPO, but they argue that Section 18 was intended to apply only to past credit reports and not to newly-created credit reports for the borrowers. Defendants contend that the intent of the MPO was to allow for original loan files (which may contain old credit reports) to be obtained from third parties, and that the MPO's references to the disclosure of "information" suggest application only to already-existing documents. The Court rejects defendants' interpretation. Section 18 is not limited by its terms to already-existing documents. The MPO authorizes the disclosure of "information", and the newly-obtained credit reports contain already-existing information concerning the borrowers' credit histories.

Defendants also suggest that Section 18 should not apply to reports obtained from third parties outside the formal discovery process. Defendants point to the following

---

[1] At the time of the stipulation, defendants were on notice that Judge Cote had denied a similar motion in the *FHFA* litigation (in which RBS and Nomura were defendants), accepting the plaintiff's arguments that included reliance on identical language in the protective order in that case.

statement of purpose in Section 1 of the MPO:

> This Protective Order (the "Order") is being entered into to facilitate the production, exchange, and discovery of documents and information that the parties agree merit confidential treatment. This Order shall govern the handling of Discovery Material produced in these Actions (as defined below).

"Discovery Material" is defined to mean "all items or information . . . produced, given, exchanged by, or obtained from any Party or Non-Party during discovery in these Actions." Defendants argue that the MPO thus was not intended to apply to credit reports that were purchased from a third party, without subpoena, outside of the formal discovery process. The Court rejects this argument as well. Neither Section 18 of the MPO nor the definition of "Non-Party Borrower Information" limits its application to material obtained by formal discovery methods. Nor does Section 1 limit the application of the MPO to material and information obtained through formal discovery; although the Order governs the handling of "Discovery Materials" (as defined), it is not limited to that purpose. Moreover, "Discovery Materials" is defined to mean information obtained from any third party "during discovery," which does not necessarily include only information obtained by use of some formal discovery process. Surely the MPO was intended to ensure the confidentiality of all confidential information obtained from any source, by whatever means, for use in the litigation. The Court thus concludes that Section 18 authorized plaintiff, for purposes of the FCRA, to obtain the credit reports at issue here.

    3.    As noted above, Subsection 1681b(a) of the Act provides that an agency

may "furnish" a report "in response to" a court order. *See* 15 U.S.C. § 1681b(a). Based on that language, defendants argue that, even if the MPO provides the necessary court order, the Act was nonetheless violated here because CBCInnovis, the reporting agency did not furnish the reports in response to the MPO. Defendants rely on a declaration by a CBCInnovis officer stating that CBCInnovis provided the reports to Opus under the 2009 agreement (which certified only a purpose of account review), that Opus never certified any additional purpose to CBCInnovis, and that there were no other agreements between Opus and CBCInnovis. Defendants thus argue that there is no evidence that CBCInnovis was shown or told of the MPO, and that CBCInnovis therefore could not have furnished the reports "in response to" the MPO.

The Court rejects this argument as well. Plaintiff has provided evidence that it authorized Mr. Butler and Opus to obtain the credit reports following entry of the MPO, and defendants have not controverted that evidence that plaintiff intended to act pursuant to the MPO in obtaining the reports. Subsection 1681b(a) of the Act is addressed not to users of information but to reporting agencies, prohibiting such agencies from furnishing reports except in response to a court order (and in other enumerated circumstances involving permissible purposes). *See id.* Thus it does not address the use of information furnished by an agency. Subsection 1681b(f), which is addressed to those who use or obtain reports, requires only that the report be "obtained for a purpose for which the consumer report is authorized to be furnished under this section." *See id.* § 1681b(f). The permissible purpose in this instance was the use as authorized by a court order.

Plaintiff did have the necessary court order—an order that was a public record and thus available to CBCInnovis—and plaintiff obtained the reports pursuant to that order. Only under a tortured and unreasonable reading of the statute could a court conclude that plaintiff did not satisfy the permissible purpose requirement of the Act in this case despite having the necessary court order, and the Court declines to adopt such an interpretation. The Court concludes that plaintiff has satisfied that requirement of the Act here.

4. Defendants next argue that, even if plaintiff had a permissible purpose for obtaining the documents, it still violated the Act by failing to certify that purpose to CBCInnovis. As stated above, under Subsection 1681b(f) of the Act, a person may not use or obtain a report unless it is obtained for a proper purpose and "the purpose is certified in accordance with Section 1681e of this title by a prospective user of the report through a general or specific certification." *See id.* Section 1681e provides that a reporting agency must maintain procedures requiring prospective users to "certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." *See id.* § 1681e(a). Defendants note, and plaintiff does not dispute, that CBCInnovis did not receive any certification from plaintiff or Mr. Butler or Opus that the reports in this case were being obtained pursuant to a court order and that they would not be used for any other purpose.

The Court agrees with plaintiff, however, that Section 18 of the MPO excuses plaintiff's certification requirement. Section 18 expressly provides not only that the

7

MPO constitutes "compliance" with any requirement of a court order for disclosure of information, but also that the parties are exempted and excused from any requirement under the applicable law to give any notice to anyone. That broad exemption would include the Act's requirement for a user to certify certain things to the reporting agency. Moreover, even if the MPO's exemption did not apply to the certification requirement, the Court would at this time—and does now—order that plaintiff need not provide any additional certification to CBCInnovis and that plaintiff may not use the information contained in the credit reports for any purpose other than a proper purpose in this litigation pursuant to the MPO. Accordingly, the Court concludes that plaintiff and its expert have not obtained credit reports in violation of the FCRA.[2]

5.   Finally, the Court notes that, even if plaintiff did commit a technical violation of the Act in obtaining the credit reports, the Court, in its discretion, would decline to sanction plaintiff for that conduct. Plaintiff reasonably relied on Section 18 of the MPO in obtaining the reports, and the Court is not persuaded that plaintiff acted in bad faith, including with respect to the failure to update the certification contained in an old agreement under which Opus and CBCInnovis continued to operate. The measures requested by defendants would be too harsh a sanction. Moreover, in considering the equities, the Court notes that defendants waited approximately seven

---

[2]In light of that conclusion based on the MPO, the Court need not address whether plaintiff was also authorized to obtain the reports pursuant to Section 1681b(a)(6), which provides for the furnishing of reports specifically to the NCUA "in connection with the resolution or liquidation" of a failed credit union.

months after receiving Mr. Butler's initial reports, in which he relied on the credit reports obtained from CBCInnovis, before filing the instant motion, and such a delay could have adversely affected plaintiff's ability to cure any violation of the Act.[3]

For these reasons, the Court denies defendants' motion to exclude opinions of Mr. Butler for violations of the FCRA.

IT IS THEREFORE ORDERED BY THE COURT THAT the RBS defendants' motion to exclude expert opinions of Steven Butler (Doc. # 740), in which motion defendants Nomura and NovaStar have joined (Doc. ## 984, 985), is hereby **denied**.

IT IS SO ORDERED.

Dated this 13th day of April, 2016, in Kansas City, Kansas.

>s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[3]The Court would also reject any *Daubert* challenge to opinions based on the credit reports, as any technical violation of the Act would not undermine the reliability of those reports.