IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NATIONAL CREDIT UNION )
ADMINISTRATION BOARD, )
 )
          Plaintiff, )
 )
   v. ) Case No. 11-2340-JWL
 )
RBS SECURITIES INC., et al., )
 )
          Defendants. )
 )
_____)

## **MEMORANDUM AND ORDER**

This matter comes before the Court on various motions for summary judgment with respect to the defense that plaintiff's claims are barred by the applicable statutes of limitation. For the reasons set forth below, the Court concludes that a question of fact remains for trial concerning whether plaintiff's claims are time-barred under the discovery rule. According, the Court **denies** the motions filed on this issue by plaintiff (Doc. # 759); by defendants RBS Securities Inc., RBS Acceptance Inc., and Financial Assets Securities Corp. (collectively "RBS") (Doc. # 768); and by defendant Nomura Home Equity Loan, Inc. ("Nomura") (Doc. # 769). Plaintiff's motion for summary judgment on the defense that the claims are barred by a statute of repose (Doc. # 759) is **granted as unopposed**.

## I.     **Background**

Plaintiff National Credit Union Administration Board brings this suit as conservator and liquidating agent of U.S. Central Federal Credit Union ("U.S. Central"). The suit relates to 20 offerings involving 29 different residential mortgage-backed securities ("RMBS" or "certificates") purchased by U.S. Central. By the present suit, plaintiff brings claims under Sections 11 and 12 of the federal Securities Act of 1933 and under a Kansas statute, based on alleged untrue statements or omissions of material facts relating to each certificate. Defendant RBS was the underwriter or seller for the certificates, while the other defendants issued particular certificates. Plaintiff asserts only a claim under Section 11 against Nomura involving a single certificate.

On July 25, 2012, the Court ruled on defendants' motions to dismiss, in which defendants argued that plaintiff's claims were time-barred. *See NCUAB v. RBS Sec., Inc.*, 900 F. Supp. 2d 1222 (D. Kan. 2012) (Rogers, J.). The Court held that plaintiff's federal claims based on three certificates issued by Fremont Mortgage Securities Corp. ("Fremont"), whose underlying loans were primarily originated by Fremont or an affiliate, were time-barred, but the Court denied the motion based on the statute of limitation with respect to all other claims. *See id.* at 1243-52.

Plaintiff now seeks summary judgment with respect to any limitations defense asserted by defendants. RBS seeks summary judgment, based on the statutes of limitation, on all claims based on 15 particular certificates. Nomura seek summary judgment based on the statute of limitation on the sole federal claim, based on one

2

certificate, asserted against it.

## II. **Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon

the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.   Statutes of Repose

In its prior ruling, the Court ruled that the limitations period imposed by the Extender Statute, 12 U.S.C. § 1787(b)(14), supplanted any other unexpired limitations or repose period; and that because the certificates in this case had been sold within three years of March 20, 2009, when plaintiff became conservator of U.S. Central, plaintiff's claims were not barred by the federal Securities Act's three-year statute of repose. *See RBS Sec.*, 900 F. Supp. 2d at 1237-43. The Tenth Circuit affirmed that ruling, and after the Supreme Court vacated and remanded for further consideration, the Tenth Circuit reinstated its previous affirmance. *See NCUAB v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246 (10th Cir. 2003), *vacated and remanded*, 134 S. Ct. 2818 (2014), *aff'd on*

4

*remand*, 764 F.3d 1999 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 949 (2015).  Based on that ruling, plaintiff seeks summary judgment on the affirmative defense of the statute of repose.  Neither RBS nor Nomura has opposed this motion.  The Court agrees that its prior ruling, as affirmed by the Tenth Circuit, precludes application here of the federal three-year and the Kansas five-year statutes of repose.  Accordingly, plaintiff's motion is granted to the extent that it relates to the defense of the application of any statute of repose.

### IV. <u>Statutes of Limitation</u>

Plaintiff's federal claims are governed by Section 13 of the Securities Act, 15 U.S.C. § 77m, which requires that a claim be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." *See id.* Plaintiff's claims under Kansas law are required to have been brought within "two years after discovery of the facts constituting the violation." *See* K.S.A. § 17-12a509(j)(2).  The Court ruled previously that the Extender Statute supplanted any limitations period not already expired when plaintiff's conservatorship began on March 20, 2009.  Thus, the relevant dates for this limitations analysis under the discovery rule are March 20, 2008, for plaintiff's federal claims and March 20, 2007, for plaintiff's state-law claims.

In ruling on the motion to dismiss, the Court stated the applicable standard for application of the discovery rule under Tenth Circuit law as follows:

5

> The clock [for the limitations period] is not triggered by "inquiry notice"—when public information would lead a reasonable investor to investigate the possibility of a violation; instead the time period begins to run when a reasonably diligent plaintiff would have actually discovered the facts constituting the violation such that he could adequately plead it in a complaint.

*See RBS Sec.*, 900 F. Supp. 2d at 1245 (citing cases). "Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." *See Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1203 (10th Cir. 1998) (quoting *Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420, 1438 (10th Cir. 1991)).[1]

In its prior ruling, in which it denied defendants' motions to dismiss plaintiff's claims as time-barred under the discovery rule with respect to most of the certificates involved here, the Court noted that prior to March 2008 U.S. Central would have had notice of the following: general, industry-wide problems in the subprime mortgage market; poor performance by U.S. Central's RMBS investments; early spikes in the default and delinquency rates for the loans underlying the certificates; risk disclosures in the certificates' offering documents; and lawsuits involving allegations that underwriting standards had been abandoned or ignored. *See RBS Sec.*, 900 F. Supp. 2d at 1246-51. Nevertheless, the Court held that it was not irrefutably clear that a reasonably diligent investor would have had sufficient facts to file a plausible claim by March 20, 2008. *See id.* In particular, the Court noted the fact that the credit rating

---

[1] No party has suggested that any other standard should govern application of the discovery rule under the Kansas statute.

agencies had not downgraded these certificates until after that date. *See id.* at 1246, 1248. The Court did dismiss plaintiff's federal claims involving the Fremont certificates, based on the additional fact that the FDIC had issued a cease-and-desist order against Fremont. *See id.* at 1251.

In seeking summary judgment on all limitations defenses, plaintiff essentially argues as a matter of law that U.S. Central did not have constructive notice of the facts underlying these claims by the relevant dates. Plaintiff relies primarily on the fact that the certificates had not yet been downgraded by the ratings agencies. Plaintiff also argues that U.S. Central (or any reasonably diligent investor) would not necessarily have believed that it had a plausible claim, despite the reports of problems in the industry and with specific originators, because it could rely on defendants' representations that underwriting guidelines were followed, and because it could trust that defendants, exercising their own due diligence, did not include bad loans in the portfolios for these certificates. RBS and Nomura, on the other hand, argue that, despite the lack of downgrades for these certificates, U.S. Central had constructive notice of sufficient facts by the operative dates as a matter of law with respect to certain certificates. The Court concludes that when the facts are considered, in turn, in the light most favorable to each non-moving party, a jury could reasonably find in favor of that party on the limitations issue based on those facts. Thus, because a question of fact remains for the jury concerning what a reasonably diligent investor would have known and done in 2007 and 2008, the Court denies both sides' summary judgment motions. *See Stichting*

*Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1136 (C.D. Cal. 2011) ("the question of what a reasonably prudent investor should have known is particularly suited to a jury determination and . . . the defendant bears a considerable burden in demonstrating, at the *summary judgment stage*, that the plaintiff's claim is time-barred") (quoting *Betz v. Trainer Wortham & Co.*, 519 F.3d 863, 877 (9th Cir. 2008)) (emphasis in original).

Defendants RBS and Nomura note that the types of facts alleged by plaintiff in its complaint to support its claims were known or could have been known before March 2007 or at least before March 2008. In that regard, defendants rely on public reports about problems in the industry, including reports that originators had abandoned or disregarded underwriting guidelines in originating loans underlying RMBS investments; data showing poor performance of the underlying loans, including early spikes and surges in defaults and delinquencies; and articles and lawsuits discussing particular originators who also originated loans underlying certificates in this case. According to defendants, by the operative dates, plaintiff lacked only the fact that the certificates would eventually be downgraded by the ratings agencies.[2] Defendants argue, however,

---

[2]Plaintiff also relied in its complaint on later-performed forensic work involving the loans, but defendants note that underlying data was available to U.S. Central, for instance on websites and in monthly reports, that would have allowed an investor to determine that actual losses were exceeding expected losses. Plaintiff also cited in its complaint a 2011 report by the Financial Crisis Inquiry Commission (FCIC), but defendants note that the FCIC report largely relied on previously-available public information. *See Woori Bank v. Merrill Lynch*, 923 F. Supp. 2d 491, 498-99 (S.D.N.Y.
(continued...)

8

that the agencies had downgraded various junior or inferior tranches for the same certificates, which indicated that there were issues with the underlying loans that supported the tranches purchased by U.S. Central.

Plaintiff relies heavily on *FHFA v. Nomura Holding America, Inc.*, 60 F. Supp. 3d 479 (S.D.N.Y. 2014), in which the court granted plaintiff FHFA summary judgment on the defense of the statute of limitations under the discovery rule as applied to similar claims involving other certificates. In holding as a matter of law that the plaintiff did not have constructive notice of its claims by September 2007, the court relied heavily on the facts that the particular investments had not been downgraded and that poor performance of the certificates would also be consistent with a nationwide decline in housing prices. *See id.* The court also concluded that a reasonable investor was entitled to rely on the defendants' representations and due diligence to shield the investors from bad loans. *See id.* Plaintiff argues that the Court should grant it summary judgment in this case for the same reasons.

RBS and Nomura are correct, however, in noting that the court in *FHFA* applied a different standard for the discovery rule. In *FHFA*, the court followed Second Circuit law in requiring that the facts known by the plaintiff investor indicate the *probability* of misrepresentations, and not merely the *possibility* of misconduct. *See id.* at 503-04 (citing cases). As noted above, however, this Court applies the Tenth Circuit discovery

---

[2](...continued)
2013).

9

standard requiring only evidence indicating the *possibility* of misrepresentations in order to trigger a duty to investigate. A different outcome is appropriate in this case because the Court concludes that a reasonable jury could conclude that sufficient facts were available to U.S. Central to indicate the possibility of claims against defendants, such that a reasonable plaintiff would have had notice of sufficient facts to state a claim by the operative dates.³

Accordingly, the Court denies plaintiff's motion for summary judgment. There is no law *requiring* a credit ratings downgrade by the operative date for a limitations defense to succeed; rather, the applicable standard provides that the time period begins to run when a reasonably diligent plaintiff would have actually discovered the facts constituting the violation such that it could adequately plead that violation in a complaint. Thus, a defendant could prevail on this defense if the plaintiff may be charged with notice of sufficient facts, even in the absence of a downgrade. Indeed, in this case the Court dismissed the claims based on the Fremont certificates without such a downgrade (one agency had merely put one certificate relating to Fremont on a *watch*

---

³The Court disagrees with the *FHFA* court's opinion that the defendants' limitations arguments in that case were "remarkable" and "audacious" in light of their arguments at the pleading stage concerning the specific allegations needed to state plausible claims and their continued insistence that there had been no misrepresentations. *See id.* at 483. The Court appreciates that defendants' limitations defense is asserted in the alternative to its substantive defenses, in the event that misrepresentations are found. Nor does the Court believe that it is inconsistent for a defendant to argue first that the plaintiff's allegations are insufficient and to argue later that, if those allegations were indeed sufficient, plaintiff had notice and could have pleaded a plausible claim earlier.

10

for a downgrade). *See RBS Sec.*, 900 F. Supp. 2d at 1251. In this case, the Court concludes that the information cited by RBS and Nomura—including the public reports of problems in the industry and with specific originators, the poor performance of the certificates and the spikes in defaults and delinquencies, and the other lawsuits—is sufficient to allow a reasonable jury to find in defendants' favor on the limitations issue, despite the absence of ratings downgrades.

The Court does agree with plaintiff, however, that the credit ratings provide strong evidence of how a reasonable investor would respond to the evidence cited by defendants. In this case, the specialists at the ratings agencies had all of the public information at their disposal and yet still declined to downgrade these particular investments until after the operative dates. Defendants note that various junior tranches had been downgraded; but the fact that all of the tranches had not been downgraded provides the reasonable inference that things are not so dire with these investments as to indicate the possibility that underwriting guidelines had been systematically abandoned. Moreover, without a downgrade for these particular investments, a reasonable plaintiff might believe that the credit enhancements for the senior tranches still provided sufficient protection, and thus the investor would not necessarily have notice of a possibility that it could suffer damages. *See In re Bear Stearns Mortg. Pass-Through Certs. Litig.*, 851 F. Supp. 2d 746, 765 (S.D.N.Y. 2012) (plaintiff could not have stated a claim supportive of damages by the operative date). The Court also agrees with plaintiff that a reasonable investor might trust defendants' representations and due

diligence concerning the adherence to underwriting guidelines and the avoidance of bad loans, and thus fail to appreciate any possibility that these particular investments did suffer from an abandonment of those guidelines. Together, those facts, viewed in the light most favorable to plaintiff, provide a sufficient basis for a reasonable finding by a jury that plaintiff's claims are not time-barred. Again, the Court relied on the absence of credit downgrades in previously refusing to dismiss plaintiff's claims as time-barred, and it still cannot say as a matter of law that U.S. Central had sufficient notice prior to the operative dates.

Defendants rely on *FDIC v. Countrywide Financial Corp.*, 2012 WL 5900973 (C.D. Cal. Nov. 21, 2012), in which the court dismissed claims as time-barred under the discovery rule despite the lack of downgrades by the ratings agencies. *See id.* at *7. The court reasoned that the plaintiff, as a sophisticated investor, could not merely rely on the agencies; that there was no rule or statutory language requiring a downgrade to start the limitations period; and that such a rule would absolve investors of their duty to monitor their investments. *See id.* The court concluded that the plaintiff in that case had sufficient information to overcome the lack of downgrades. *See id.*

The Court agrees with the *Countrywide* court that there is no rule requiring a downgrade for the limitations period to run, and it has not applied such a rule here. Rather, the Court concludes that an investor might reasonably rely on the ratings and that the evidence is sufficient to create a jury issue here. Certainly, the lack of a downgrade can be overcome, as it was with respect to the claims in this case based on the Fremont

12

certificates. The Court concludes, however, that no facts comparable to the Fremont cease-and-desist order have been cited by defendants, such that the Court could resolve this issue in defendants' favor as a matter of law.

The Court addresses a few of the originator-specific and certificate-specific facts on which defendants most heavily rely. Defendants cite the data indicating the poor performance of the certificates and the underlying loans. As plaintiff notes, however, such performance might also have been caused by factors other than a disregard for underwriting guidelines, and as the Court previously ruled, such facts are not sufficient to provide the necessary notice as a matter of law. It is true that plaintiff alleged that such facts, when considered with all of the other facts, were indicative of a disregard of guidelines; but without ratings downgrades, the Court cannot say that such data indicates an abandonment of guidelines as a matter of law. The same is true for Nomura's evidence that U.S. Central valued the Nomura certificate at 75 percent of its previous value prior to the operative date—such devaluation could result from other factors, and such evidence is not so overwhelming, on a par with the cease-and-desist order, to compel judgment as a matter of law on this issue.

Nomura also relies heavily on the *Plumbers' Union* lawsuit filed on January 31, 2008, in Massachusetts state court against a Nomura entity involving different certificates but involving allegations of failures to adhere to underwriting guidelines. That case was filed in state court, however, less than two months before the relevant date of March 20, 2008. Nomura provides evidence that the filing was mentioned in one

13

newsletter and one blog prior to March 20, 2008, although as plaintiff points out, the newsletter was for subscribers, and the blog was directed to director-and-officer-liability issues. At any rate, the Court cannot conclude as a matter of law that the *Plumbers' Union* filing received sufficient publicity that a reasonable investor would have known of it, thus triggering a duty to investigate under inquiry notice, and then learned of sufficient facts to state a plausible claim by March 20, 2008. *See Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 436 (2d Cir. 2008) (reasonable investor would not have known about a lawsuit filed in a state court that did not generate publicity or broadly-disseminated opinions within the relevant time period).

RBS relies on the *Luther* complaint, involving allegations relating to Countrywide as an originator of loans, which was filed in California state court on November 14, 2007. One court has stated that *Luther* and other lawsuits provided a plaintiff with notice of misrepresentations by Countrywide regarding underwriting standards "by late 2007 or early 2008," and the court thus concluded that the limitations period began to run by the operative date of February 2009. *See Stichting*, 802 F. Supp. 2d at 1136-37. In addition, in *Countrywide Financial*, discussed above, the court cited *Luther* in dismissing claims based on an operative date of May 22, 2008. In neither case, however, did the court conclude that *Luther* provided sufficient notice to allow for a reasonable investor to file a plausible claim by March 20, 2008. Nor did either case discuss whether the filing of the *Luther* lawsuit generated any publicity that would have provided notice to a reasonable investor. Nor has RBS provided any evidence of such publicity. Thus, the

Court cannot conclude as a matter of law that plaintiff's claims based on certificates involving Countrywide as an originator are time-barred under discovery date of March 20, 2008.

Similarly, defendants have not pointed to other lawsuits filed sufficiently in advance of the operative dates, with sufficient publicity, that would compel the conclusion as a matter of law with respect to any certificate that U.S. Central had notice by March 20, 2007, or by March 20, 2008, of facts sufficient to indicate a violation despite the lack of a ratings downgrade. Accordingly, the Court denies defendants' motions for summary judgment based on the application of the statutes of limitation.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for summary judgment (Doc. # 759) is **granted** as it relates to the application of any statute of repose, and plaintiff is awarded judgment on that defense. The motion is hereby **denied** as it relates to the application of the statutes of limitation. The motion otherwise remains pending.

IT IS FURTHER ORDERED BY THE COURT THAT the motions for summary judgment based on the statutes of limitation by the RBS defendants (Doc. # 768) and by defendant Nomura (Doc. # 769) are hereby **denied**.

IT IS SO ORDERED.

Dated this 1st day of September, 2016, in Kansas City, Kansas.

                                                      s/ John W. Lungstrum  
                                                John W. Lungstrum  
                                                United States District Judge